272 F.2d 291
 McWATERS AND BARTLETT, a co-partnership consisting of Hugh B. McWaters and Sidney J. Bartlett; and General Casualty Company of America, a corporation, Appellants,
v.
UNITED STATES of America, for the use and benefit of Lewis H. WILSON, Appellee.
AMERICAN SURETY COMPANY OF NEW YORK, a corporation, Appellant,
v.
McWATERS AND BARTLETT, a co-partnership consisting of Hugh B. McWaters and Sidney J. Bartlett; and General Casualty Company of America, a corporation, Appellees.
 No. 6111.
 No. 6110.
 United States Court of Appeals Tenth Circuit.
 November 9, 1959.
 Rehearing Denied in No. 6110 December 10, 1959.
 
 COPYRIGHT MATERIAL OMITTED Edward E. Murane, Casper, Wyo. (Murane, Bostwick & McDaniel, Casper, Wyo., were with him on the brief), for appellants and appellees, McWaters and Bartlett.
 H. Gayle Weller, Denver, Colo., and Clarence A. Swainson, Cheyenne, Wyo. (W. Robert Ward, Denver, Colo., was with them on the brief), for appellant American Surety Co.
 Louis A. Mankus, Cheyenne, Wyo. (J. Edward Amschel, Jackson, Wyo., was with him on the brief), for appellee United States for use and benefit of Lewis H. Wilson.
 Before PHILLIPS, HUXMAN and PICKETT, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 Both of these cases arise under 40 U. S.C.A. §§ 270a and 270b (the Miller Act). Because they arose out of the same general contract, they were consolidated for trial in the court below and on appeal in this court. The original complaint was filed by the United States for the use and benefit of Lewis H. Wilson against McWaters and Bartlett, a co-partnership, consisting of Hugh B. McWaters and Sidney J. Bartlett, and General Casualty Company of America, and American Surety Company. After a first trial, the case was dismissed as to the American Surety Company, and a new trial was ordered as between the remaining parties. Before the second trial, the defendants, McWaters and Bartlett, and General Casualty Company of America, as third-party plaintiffs, filed a complaint against the third-party defendants, Calvin W. Clark and American Surety Company of New York. Clark was never served with a summons. At the conclusion of the second trial, the court made separate findings of fact and conclusions of law in each case, and, based thereon, entered separate judgments.
 
 Number 6111
 
 2
 In this case, the court found these facts. On June 14, 1954, McWaters and Bartlett entered into a written contract with the United States Department of Interior, Bureau of Reclamation, for the construction and completion of the earth work and structures of a project known as Eden Canal, for an agreed consideration. General Casualty Company executed and delivered to the United States, the Miller Act bond for the benefit of all persons supplying labor and material in the performance of the work provided for in the contract.
 
 
 3
 Lewis H. Wilson entered into a contract with Calvin W. Clark for the performance of some work which Clark had agreed to perform under a subcontract from McWaters and Bartlett. Wilson completed his contract with Clark, furnishing services and material, on which there remained due from Clark, as found by the court, the sum of $6,145.85. Clark defaulted and did not pay Wilson's claim. While appellants attack the trial court's findings numbered 7, 8, 9, 14, 15 and 16, the decisive question is whether the court's conclusion that Wilson sufficiently complied with the statutory requirement of the Miller Act, with respect to notice of his claim to McWaters and Bartlett, under his contract with Clark, finds support in the record. The decision turns upon whether finding number 15, "That due notice had been given by plaintiff to McWaters of the indebtedness within ninety days after the completion of the work by plaintiff." is supported by competent evidence.
 
 
 4
 40 U.S.C.A. § 270b(a) provides that one who would assert a claim against a contractor with whom he has no contractual relations, because of work or materials furnished under a contract with a subcontractor, must give written notice of his claim to the contractor within ninety days from the furnishing of the last labor or material. In finding number 8, the court found that on October 21, 1954, McWaters came to the work site of Wilson and talked to him and Melvin Wilson; that plaintiff notified McWaters that he had not been paid by Clark, and referred to Exhibit 5,[1] presented Exhibit 5 to McWaters and requested payment, and that the nature and state of the indebtedness to Wilson was brought home to him. In finding number 10, the court found that on November 17, 1954, plaintiff again talked to McWaters on the site, and exhibited the written itemization of the amount to McWaters for gas used on the Job, and that McWaters informed him that this amount would be deducted from the amount due Wilson from Clark, and in turn would be deducted from what McWaters owed Clark. Based upon these findings, the court found in finding number 15, "That due notice had been given by plaintiff to McWaters of the indebtedness within ninety days after completion of the work by plaintiff."
 
 
 5
 All the cases hold that the Miller Act, being remedial, must be liberally construed to effectuate the purposes of the Act.[2] Written notice there must be. But while the Act requires written notice, it does not require notice in any particular form. In all the cases cited in footnote 2, the written notice found sufficient, was more or less informal. In United States ex rel Hargis v. Maryland Casualty Company, invoices and other written documents, exhibited to the contractor, were held to be sufficient. In United States for Use and Benefit of Hopper Bros. Quarries v. Peerless Casualty Company, a letter by the claimant stating that he had not been paid by the subcontractor, and inquiring whether the contractor could do anything about it, and a reply that if satisfaction was not obtained, it would turn the matter over to the Bonding Company, was upheld as sufficient. In Houston Fire & Casualty Ins. Co. v. United States, it was held that the writing relied upon need not be signed by the claimant, and that it was sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor. In Coffee v. United States, it was held that where the materialman, having no contractual relation with the contractor, exhibited to him a notice of his claim, consisting of a writing showing the amount claimed and the identity of the subcontractor, and that the contractor examined and discussed, and might have taken the writing, there was sufficient notice.
 
 
 6
 Exhibit 5 is the writing which must constitute written notice in order to find compliance with the requirement of the statute. It is an itemized statement setting out, in detail, the amount claimed due from Clark. On direct examination, claimant, Lewis Wilson, testified that Exhibit 5, a small piece of paper, was contained in a little brown book he carried around on the job with him; that he and McWaters were standing right together; that he told McWaters that Clark owed him $7,900 and that McWaters looked at the piece of paper. On cross examination, he testified that he asked McWaters to pay this bill — that that was what he was there for. He testified that he asked McWaters whether he was going to pay the bill or who was. Melvin Wilson, a witness for claimant, testified that claimant, Wilson, read and exhibited the figures to defendant McWaters, in addition to showing the notebook.
 
 
 7
 While, of course, there is other evidence from which appellant seeks to draw its conclusions, we think the evidence outlined above is sufficient to support the court's finding that written notice of Wilson's claim was served upon McWaters and was brought home to him. It is not essential to a valid service that McWaters actually had this writing in his hand. If he saw it and knew its contents, that was sufficient. If the above evidence is believed, as it was by the court, it establishes that a written claim was served on McWaters. He saw the writing, and knew that the amount was claimed from Clark, his subcontractor, for work and labor performed in fulfillment of the contract.
 
 
 8
 It was not essential that a demand be made on McWaters for payment, although there was enough in the evidence from which it could be found that Wilson looked to McWaters for payment. The statute does not require a demand for payment. It requires only written notice of the claim. The purpose of the notice to the principal contractor is to enable him to protect himself against his subcontractor by withholding from him money due on his subcontract.[3] An examination of the record compels the conclusion that it supports the court's findings of fact and conclusions of law.
 
 Number 6110
 
 9
 This case arises out of the same general contract to McWaters and Bartlett, and subcontract from them to Clark, described in Case Number 6111. Clark was to receive a consideration of $69,000 for the work he agreed to perform under his subcontract. The American Surety Company executed its bond to McWaters and Bartlett in the sum of $69,000, guaranteeing performance by Clark of his subcontract. In their third-party complaint in this case, WcWaters and Bartlett, and General Casualty Company, asked judgment against third-party defendants, American Surety Company and Clark, for any sum for which judgment was rendered against them, and in Wilson's favor, in Case Number 6111. They also asked judgment for costs and attorneys' fees expended by them in defense of the suit by the United States on behalf of Wilson.[4] Such a judgment was rendered and this appeal challenges the correctness thereof.
 
 
 10
 Two defenses were asserted by American Surety Company against third-party complainants. It was asserted that American Surety Company had already expended more in the discharge of its liability, under its bond, than the maximum amount of its liability in the sum of $69,000; and, secondly, that this action was not timely filed. In finding number 15, the court found that after default by Clark, American Surety Company took over the completion of Clark's contract, and in its conclusion of law number 2, the court concluded that by taking over the completion of the job, it thereby waived the penalty limitation of its bond, as well as the provision of the bond limiting the time within which an action might be begun thereon. The decision turns upon the correctness of the court's finding number 15, and its conclusion of law number 2.
 
 
 11
 Without detailing the evidence, we content ourselves by saying there is evidence to sustain the court's finding of fact that American Surety Company took over Clark's contract and agreed to complete it. That would, of course, subject itself to full liability for all amounts incurred in furnishing labor and material in the completion of the job, irrespective of the $69,000 liability limitation in its bond.[5] The court, accordingly correctly concluded, as a matter of law, that by such action American Surety Company waived the penalty limitation of its bond.
 
 
 12
 But does it follow that by such act, and without more, it also waived the contractual provision of the bond that anyone having or claiming to have a claim must file suit thereon by April 15, 1956? We think not. The contractual limitation for filing actions on the bond was separate and apart from the provision fixing maximum liability. The two provisions were not interrelated nor connected in any way. Conduct, which would amount to a waiver of the maximum liability, would not, without more, be sufficient to waive the time limitation for filing of suits. When American Surety Company agreed to complete the contract, it stepped into the shoes of the subcontractor and, by operation of law, became liable to the full extent of his liability, but by completing the contract, it did not, by implication, agree that anyone asserting a claim against it might sue otherwise than within the time specified in its bond.
 
 
 13
 Appellee seeks to sustain the court's judgment on the ground of estoppel. Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay. To constitute estoppel there must be deception relied upon by the other to his detriment. American Surety Company never told McWaters or Bartlett that it would pay the Wilson claim, or even if it is contended there is evidence from which a promise to pay can be inferred, American Surety Company denied liability for this claim long before the time fixed for suit in the bond had passed.
 
 
 14
 From and after May 2, 1955, McWaters and Bartlett knew that American Surety Company denied liability for Wilson's claim, and contended that liability therefor rested upon McWaters and Bartlett. On April 13, 1955, Randall Wallis, attorney for McWaters and Bartlett, addressed a letter to Ben J. Duncan, Claim Manager for American Surety Company, in which he said, "As you know, it is our position that since you undertook to assist the subcontractor in the completion of his subcontract by the rental of equipment and the advance of certain moneys and your active participation on Mr. Clark's behalf, we feel it is incumbent upon you to arrange for the completion of this subcontract." And, "I understand from your recent phone conversation that you are willing and intend to complete Mr. Clark's contract * * *. Please feel free to advise me if for any reason the foregoing does not outline the current status of this matter." This letter was answered by George G. Leacher under date of May 2, 1955. The writer stated that Wallis' letter to Duncan was referred to him for reply. The letter referred to a meeting with McWaters and concerning that meeting, stated, "At the outset, I explained to Mr. McWaters that we were not obligated under the terms of our bond to take over the physical completion of this work. * * *" It further stated, "Before closing this letter, I should like to make our position entirely clear on this entire matter, so that we may avoid any misunderstanding. Our bond is in the penal sum of $69,000.00. It is our position that this figure represents the maximum amount of our liability." The letter proceeded to set out figures showing how much the Surety Company had already paid in discharge of its obligation under its bond. It recited the payments that had been made and stated that because thereof, the amount available for payment from the bond obligation was reduced to $29,524.64. It recited that information had come to it of additional claims against Clark totaling $50,210.19, which included a claim to Lichty Construction Company, totaling $33,343.76, and Wilson's claim of $7,345.85. The letter proceeded by stating, "Included in this figure is a claim of Lichty Construction Company * * * and a claim of Lewis H. Wilson for excavating in the amount of $7,345.85." It stated that while these were the major items, according to Mr. McWaters' letter of April 21, 1955, the only claimant having complied with the Miller Act was Lichty Construction Company, and that, therefore, the other claims, by inference, including that of Wilson, would not be a liability. The letter then said, "The picture shapes up as follows:
 
 
 15
 "Bond Penalty $69,000.00
 Paid to date $39,475.36
 Add. claim of Lichty 33,343.76
 Cost to complete 7,000.00 79,819.12
 ______________________
 Deficit $10,819.12
 Less contract balance (approx.) 8,887.32
 __________
 1,931.80
 ==========
 
 
 16
 "If matters work out in this fashion, the last mentioned figure of $1,931.80, would represent the excess loss to be absorbed by McWaters and Bartlett. However, if any of the doubtful claims qualify under the Miller Act, this loss will increase accordingly."
 
 
 17
 After this letter of May 2, 1955, there could be no doubt in the minds of McWaters and Bartlett as to American Surety Company's position with respect to Wilson's claim, if it were established as a claim against them. It denied liability therefor and placed the responsibility for its payment with McWaters and Bartlett. This letter was written more than eleven and one-half months before the final date for filing suits on the bond as fixed therein.[6] Furthermore, the original complaint by the United States for the benefit of Wilson, which alleged that McWaters and Bartlett and General Casualty Company of America were liable for the Wilson claim, was filed March 21, 1956. This, likewise, constituted notice to them that liability was being asserted against them because of the Wilson claim.
 
 
 18
 Reasonable provisions limiting the time within which actions may be brought on building contractors' bonds are valid, and will be enforced.[7] In this case, appellees had more than eleven months in which to file an action after they knew that American Surety Company denied liability for the Wilson claim. They had nearly a month's notice by the filing of the original suit by the United States that liability had been asserted. Notwithstanding, they waited for two and one-half years, and for approximately seventeen months, after the expiration date for filing suits fixed in the bond, before they instituted this action. The action was not timely brought and should have been dismissed.
 
 
 19
 In Number 6111, McWaters and Bartlett v. United States, et al., the judgment is affirmed.
 
 
 20
 In Number 6110, American Surety Company of New York v. McWaters and Bartlett, et al., the judgment is reversed, and the cause is remanded with directions to proceed in conformity with the views expressed herein.
 
 
 
 Notes:
 
 
 [1]
 Exhibit 5 is an itemized statement, in writing, of the amount of labor and material furnished by Wilson, and the amount due thereon
 
 
 [2]
 United States ex rel. Hargis v. Maryland Casualty Co., D.C., 64 F.Supp. 522; United States for Use and Benefit of Hopper Bros. Quarries v. Peerless Casualty Co., 8 Cir., 255 F.2d 137; Coffee v. United States, 5 Cir., 157 F.2d 968; Houston Fire & Casualty Ins. Co. v. United States, 5 Cir., 217 F.2d 727
 
 
 [3]
 United States ex rel. Hargis v. Maryland Casualty Company, D.C., 64 F.Supp. 522
 
 
 [4]
 Defense of the Wilson suit was tendered to American Surety Company and was declined by it
 
 
 [5]
 43 Am.Jur., Page 947, § 204; MacDonald v. Calumet Supply Co., 215 Ind. 536, 19 N.E.2d 567, 21 N.E.2d 400, 122 A.L.R. 502, 509
 
 
 [6]
 The bond contains this provision: "Provided, however, that no suit shall be brought on this bond after the 15th day of April, 1956."
 
 
 [7]
 Burlew v. Fidelity & Casualty Co., 6 Cir., 64 F.2d 976; Bunker v. United States Fidelity & Guaranty Co., 10 Cir., 72 F.2d 899