436 F.2d 1366
 11 A.L.R.Fed. 911
 UNITED STATES for the Use of Howard L. NELSON and Milton A.
Nelson, d/b/a Nelson Brothers, a copartnership; and Howard
L. Nelson and Milton A. Nelson, d/b/a Nelson Brothers, a
copartnership, Plaintiffs, Appellants,
v.
RELIANCE INSURANCE COMPANY, a corporation; Utilco
Constructors, a division of McGrath Construction Company, a
corporation; McGrath Construction Company, a corporation;
and J. M. McGrath, Defendants, Appellees.
 No. 24-70.
 United States Court of Appeals, Tenth Circuit.
 Jan. 18, 1971.
 
 Leonard O. Thomas, Kansas City, Kan. (Robert H. Bingham and David K. Fromme, Kansas City, Kan., on the brief), for appellants.
 John J. Alder, Overland Park, Kan. (Richard D. Rixner, Overland Park, Kan., on the brief), for separate appellee, Reliance Ins. Co.
 Before PHILLIPS, HILL and HICKEY,* Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This is a Miller Act suit, in which Nelson Brothers, a subcontractor, seeks recovery from the prime contractor, McGrath Construction Company (Utilco),[1] and the latter's surety, Reliance Insurance Company. The complaint prayed for relief under 40 U.S.C. 270a through 270d for labor and materials furnished, and for damages on a common law count that Nelson Brothers, through the promises and misrepresentations of McGrath and Reliance, was induced not to file an action until after the Miller Act statute of limitations had expired. The suit was tried to the court without a jury. The trial court held that Reliance was not estopped to plead the Miller Act statute of limitations and that it barred Nelson Brothers' claim against the surety. No decision was rendered on the common law count.
 
 
 2
 In March, 1964, McGrath entered into a contract with the United States and, pursuant to Miller Act provisions, a bond was posted naming McGrath as principal and Reliance as surety. In April, 1965, Nelson Brothers subcontracted to do a portion of the work required under the prime contract. On or about May 8, 1965, Nelson Brothers completed performance under its subcontract and on June 26, 1965, the surety was notified, through its Tulsa Agency, that Utilco owed Nelson Brothers $24,527.76. During the ensuing fifteen months a good deal of correspondence was exchanged between the parties heretofore mentioned. It was during those months that Nelson Brothers claims it was induced by Reliance and Utilco to await the completion of negotiations between the prime comtractor and the Corps of Engineers. All that time, it is alleged, it was represented to appellants that there would be payment in full when the negotiations were concluded. But when the Corps and McGrath did settle, and the liquid assets were insufficient to satisfy creditor demands, Reliance sought to escape liability by pleading that the statute of limitations had expired.
 
 
 3
 In the original complaint, Nelson Brothers obviously deemed themselves to be within the Miller Act statute of limitations, for they alleged that less than one year had expired from date of final settlement between the United States and the prime contractor. Unfortunately, the period of limitations had been amended to run for one year from the day on which the last labor was performed or materials supplied.[2] As appellants now recognize, to be within the period of limitations suit had to be filed on or before May 8, 1966. Accordingly, by amended complaint, Nelson Brothers alleged that notwithstanding the expiration of the period of limitations, the representations and conduct of the appellee should estop their reliance on the amended statute.
 
 
 4
 The trial court failed to enter findings of fact on the issue but denoted the following as conclusions of law. 'The evidence is insufficient to establish that use plaintiffs were induced to forbear suit until the Miller Act Statute of Limitations had run on their claim against Reliance.' Next the trial court concluded that Reliance was not estopped from asserting the statute of limitations defense (a) because 'plaintiffs' own want of reasonable care and diligence prevents them from invoking the doctrine of estoppel' and (b) because the evidence did not show that 'use plaintiffs relied upon any representations of Reliance with respect to the statute of limitations.'
 
 
 5
 Although the trial court denoted the foregoing as conclusions of law, we are persuaded that because there are no findings of fact to support such conclusions and because the conclusions are actually factual determinations, they should be treated and referred to as findings of fact, and subject to the clearly erroneous test. F.R.Civ.P., Rule 52, 28 U.S.C. Featherstone v. Barash, 345 F.2d 246 (10th Cir. 1965); Houck v. Hinds, 215 F.2d 673 (10th Cir. 1954).
 
 
 6
 The operative facts upon which appellants rely are these. On June 26, 1965, Nelson Brothers notified Reliance through their Tulsa Agency that Utilco owed Nelson Brothers $24,527.76. Thereafter, receiving no satisfaction from Utilco, appellants initiated further correspondence with Reliance. On July 9, 1965, Howard Nelson employed attorney Apt to telephone Wilkinson in the Tulsa Agency, to inquire into the payment of the claim by the surety. As part of that conversation, Wilkinson said: 'You don't need to worry about the bonding company not making payment if he (McGrath) doesn't and that they (Reliance) would even pay the interest if he (McGrath) didn't pay it.' Following the conversation with the Tulsa Agency, Apt posted a letter to the Philadelphia office of Reliance, pointedly advising them that Nelson Brothers was looking directly to the surety for the amount due and owing. Moreover, the letter said: 'We will hold off legal action until the 23rd of July, which should enable your company ample time to look into the matter and inform us as to their intentions in termination of this matter by paying the balance in full.' On that same date, Utilco responded to a copy of the June 26 letter by notifying Nelson Brothers that an overcharge of $1,581.99 had been made.
 
 
 7
 The July 13 response of Reliance was that it was communicating with the principal as to its position regarding the matter, and that in the meantime, it reserved all rights. By letter of the following day, Wilkinson informed Philadelphia of the developments. He reported that on the previous day, July 13, McGrath advised the agency that he was not financially able to meet Nelson's demands and thereby had to put the matter in the surety's hands. McGrath specifically requested funds to settle with Nelson Brothers to prevent a creditor's stampede, but was refused. Finally, Wilkinson reported that he had written Apt that day 'in an effort to loosen him from his July 23rd ultimatum.'
 
 
 8
 In the July 14 letter to Apt, Wilkinson stated that he felt no cause for alarm since the balance was due less than sixty days; he acknowledged the concern of Nelson Brothers and asked Nelson Brothers' indulgence 'while this matter is referred to the Reliance Bond Claim Department in Philadelphia for consideration.' Wilkinson further assured appellants that the Bond Claim Department would investigate and clarify the matter before committing themselves, whereupon they would surely take immediate action and keep Nelson Brothers advised of all developments. The letter concluded with the statement that while the agency could only make recommendations as to the disposition of the claim, it was doing so forthwith to put the demand in proper hands.
 
 
 9
 Until December 16, 1965, the only correspondence regarding the claim was between Philadelphia and Tulsa. Appellants' failure to continue corresponding is explained by their reliance on the representations of the surety that settlement would be forthcoming and the fact that Howard Nelson was incapacitated during the period with injuries. During the interval, Wilkinson informed Philadelphia that Nelson's work was completed prior to July 4; that Nelson would not await payment of their claim until McGrath settled with the government; that McGrath had again requested a loan to pay pressing creditors; that McGrath was in no position to negotiate settlement with his creditors; and that although Nelson Brothers had not been heard from recently, 'it can be presumed they are waiting to learn of your decision.' In September, 1965, Reliance made overtures to loan McGrath money to pay creditors but McGrath refused to sign the necessary security papers and thus the loan was not consummated.
 
 
 10
 On December 13, Wilkinson reported on the status of another pressing creditor. He informed Philadelphia that after reporting some favorable information regarding settlement with the Corps the creditor agreed to await making demand upon the surety. In addition, the letter recited that Nelson Brothers 'have refrained from pressing any claim because of the fact Nelson was in a severe auto accident, and not able to attend to business matters. Of course, this may change at any time.' On December 16[3] Apt wrote a letter jointly addressed to the Philadelphia and Tulsa offices of Reliance. He noted that the surety failed to supply any information, including the figures on the Utilco claim and again stated that Nelson Brothers would file suit if Reliance did not respond in ten days. The next day Wilkinson replied: 'It is our understanding that the principal is on the verge of completing negotiations with the Corps of Engineers on this job at which time direct settlement overtures will be negotiated with the creditors. Therefore, we recommend you diary your file ahead for a period of time, keeping in contact with us, as the matter is finalized with the Corps.' The admitted purpose of this correspondence is related in a letter from Wilkinson to Philadelphia wherein he said the reply to Nelson was 'for the purpose of attempting to nullify the ten day limitation placed on us by the attorney.'
 
 
 11
 Apt wrote a joint letter to the Philadelphia and Tulsa offices on March 17, 1966. That letter stated: 'We intend to pursue all legal courses to enforce proper collection of the total amount due which will, of course, necessitate the bringing of your bonding company into the litigation. * * * I will expect to hear from you as soon as possible.' After a telephone conversation with the Tulsa office, McGrath replied on March 22 that as soon as funds were made available from the Corps the account would be settled. Reliance did not again correspond with Nelson Brothers. But, on August 26, 1966, Wilkinson opined in a letter to Philadelphia that the Nelson Brothers' claim was 'outlawed' under the Miller Act. This suit was filed September 30, 1966.
 
 
 12
 The problem that first confronts us is whether, in a Miller Act suit, a surety may be estopped from defending on the ground that the action was not commenced within the time specified in 40 U.S.C. 270b(b). The Ninth Circuit in United States for Use of E.E. Black Limited v. Price-McNemar Construction Company, 320 F.2d 663 (9th Cir. 1963) has considered the question and decided it in the affirmative. We think their analysis is correct. In Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), the Supreme Court in a FELA case rejected the view that the principles of estoppel against reliance upon statutes of limitations are not applicable to statutes that create a cause of action where none existed before and therein limit the time for commencing suit. Relying on the rationale of Glus, the Ninth Circuit determined that 'the statute of limitations made a part of the Miller Act is not significantly different from that which is incorporated in the Federal Employers' Liability Act.' And since nothing appears in the Miller Act to indicate that the principle of estoppel may not be applied, we conclude that, if the circumstances warrant, a litigant may be estopped from defending on the statute of limitations.
 
 
 13
 In McWaters and Bartlett v. United States for Use and Benefit of Wilson, 272 F.2d 291, 296 (10th Cir. 1959), another Miller Act case, we said: 'Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay. To constitute estoppel there must be deception relied upon by the other to his detriment.' In essence, appellants urge that a debtor who induces his creditor to defer action by means of a request for delay, and by assurances that the debt would be paid or settled, should not be able to deny liability by deferring legal action beyond the effective statute of limitations. We agree.
 
 
 14
 In deciding that Nelson Brothers failed to produce sufficient evidence to establish that they were induced to forbear litigation until after the statute of limitations had expired, the trial court clearly erred. Neither the findings of the lower court nor the appellate brief of Reliance have pointed us to any evidence supporting the finding that appellants relied on their own knowledge and judgment. To attempt to support such a conclusion with facts of record would be to torture the evidence as it plainly and reasonably appears. The evidence of record simply will not permit the inference that the delay was due to factors other than appellee's representations and inducements.
 
 
 15
 At the very outset, Reliance assured Nelson Brothers that they need not worry about their claim being paid if McGrath failed to do so.[4] In July, 1965, after the threat of suit, Reliance asked for appellants' indulgence while the claim was being investigated and the matter clarified. They assured the subcontractor that they would take immediate action and would keep claimants informed. Again in December, 1965, after surety failed to inform appellants of any progress in settlement of the claim, suit was again threatened. This time Reliance reported that the principal was on the verge of completing negotiations with the Corps of Engineers at which time direct settlement overtures would be made. Furthermore, the surety asked appellants to diary their file ahead for a period of time. Nelson Brothers waited until March, 1966, without any word from Reliance. Thus, another letter was posted to the surety to ascertain the status of the claim. Apparently at the behest of Reliance, McGrath represented, in substance, that negotiations were continuing with the Corps and upon settlement, payment would be forthcoming.
 
 
 16
 In sum, Nelson Brothers contacted the surety on four occasions, manifesting the clear intent to file suit if the claim was not settled forthwith. On every occasion their requests and demands were met with answers which assured them that amicable settlement was just around the corner. When the foregoing representations are viewed in the light of what Reliance knew and intended, it is clear that their conduct and representations were calculated to convey the impression that Nelson Brothers should defer action pending the settlement negotiations between the prime contractor and the Government and that Reliance would pay appellants' claim if McGrath did not. Cf. General Insurance Company of America v. United States for Use of Audley Moore and Son, 406 F.2d 442 (5th Cir. 1969).
 
 
 17
 Reliance knew as early as July 13, 1965, that the prime contractor did not dispute the Nelson Brothers' claim of $22,945.77 and later that McGrath admitted owing $23,024.41. The July, 1965, letter from Wilkinson to appellants was expressly for the purpose of loosening Apt from his threat of bringing suit. The same reason was expressed in an interoffice correspondence concerning Apt's December letter. And in the meantime, time, several facts came to the attention of Reliance which would likely have substantially affected appellants' approach, but were never communicated to them.
 
 
 18
 Appellants were never told-- nor could they have reasonably been expected to ascertain-- that by the fall of 1965 it was known by the surety that McGrath was in no position to negotiate settlements with his creditors; that McGrath realized his perilous financial condition and had asked for the surety's assistance; and that the settlement negotiations between McGrath and the Corps had undergone substantial delays. Notwithstanding, in December, 1965, Reliance represented to appellants that settlement was near and they should just be patient. And by late December, 1965, it is apparent from the interoffice communications that Reliance would not stand behind the claims without legal action. As needless as it is to speculate, it seems certain from the climate surrounding the correspondence and Howard Nelson's attitude that, had the full facts been revealed, or had Reliance not painted so rosy a picture, a suit would have been commenced within the period of limitations. This evidence sufficiently demonstrates that Reliance did in fact lull Nelson Brothers into believing that the claim would be amicably settled within a reasonable time.
 
 
 19
 The two factors given in support of the finding that Reliance was not estopped to defend on the basis of the statute of limitations are legally infirm. The court below saw appellants' failure to correctly ascertain the appropriate statute of limitations as a failure to exercise reasonable care. But so far as we are able to determine, there appears no reason in principle why knowledge of the statutory period should be a critical factor in the invocation of equitable estoppel. The gravamen of the doctrine is that the party so pleading was induced to rely upon certain representations, not that he was fully aware of the consequences of reliance should it prove to have been mistaken. United States for Use and Benefit of Humble Oil & Refining Company v. Fidelity and Casualty Company, 402 F.2d 893 (4th Cir. 1968).
 
 
 20
 Likewise, the fact that Reliance never actually misrepresented the statute of limitations to appellants is of little consequence. As indicated above, the rudimentary tenet of estoppel is that the conduct of one has been such as to induce another to change his position in good faith, or such that a reasonable man would rely upon the representations made. Thus, it is not essential that before one may assert estoppel to plead the statute of limitations the other party must have misrepresented the period of limitations.
 
 
 21
 For these reasons the case is Reversed and Remanded with instructions to enter judgment in favor of Nelson Brothers and against Reliance Insurance Company, in the amount of $23,026.41, and interest according to law. Count II of appellants' appeal appears as alternative to Count I and accordingly need not be decided.
 
 
 
 *
 Judge Hickey, because of his death on September 22, 1970 did not participate in this opinion
 
 
 [1]
 McGrath Construction Company has confessed judgment in favor of Nelson Brothers in the amount of $23,026.41. Hence, the party litigants in this appeal are Nelson Brothers and Reliance Insurance Company
 
 
 [2]
 '(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing * * * but no suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him.' 40 U.S.C. 270b
 
 
 [3]
 By this time Nelson Brothers' right of action had clearly accrued: 'Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him.' 40 U.S.C. 270b(a)
 
 
 [4]
 The trial court conclude that Wilkinson had apparent authority to act in behalf of Reliance. The many interoffice communications verify this finding