UNITED STATES of America For the Use and Benefit of ATLAS EREC-TION COMPANY, INC.

v.

CONTINENTAL CASUALTY COM-PANY et al.

Civ. A. No. 69–1788.

United States District Court,
E. D. Louisiana.

March 30, 1973.

Kenneth V. Ward, New Orleans, La., for plaintiff.

A. Morgan Brian, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants.

JACK M. GORDON, District Judge:

The plaintiff, Atlas Erection Company, Inc., is a subcontractor who is asserting a claim for $8,226.90 against the prime contractor, Mike Bradford and Company, Inc., and its surety, Continental Casualty Company, on a statutory payment bond furnished pursuant to the requirements of the Miller Act, 40 U.S.C. § 270a et seq. The prime contractor defaulted prior to its completion of the government project so it is merely a nominal defendant in this litigation. After partial payment of plaintiff's claim by the surety and continued correspondence among the parties, the surety denied liability and refused further payment on the ground that the subcontractor's statutory rights had been preempted since more than one year had elapsed following completion of the plaintiff's work.[1] Plaintiff, on the oth-

---

1. Under the Miller Act, 40 U.S.C. § 270a et seq., as amended in 1959, a person who has furnished labor or material to a con-

tractor for federal public buildings or works, in respect to which the contractor has furnished a payment bond, must

er hand, alleges that it was lulled into a sense of false security by the surety's conduct, and that plaintiff delayed filing suit in anticipation of an amiable disposition of the claim. The law, states the plaintiff, permits the utilization of the estoppel doctrine to defeat the defendant's period of limitations defense in a Miller Act suit, and, moreover, the plaintiff argues that the facts of this case dictate such a course.

Traversing an area relatively undeveloped in the Fifth Circuit, this Court concludes that the Miller Act is subject to the doctrine of equitable estoppel, which, if warranted by the facts, vitiates the defense based on the statute of limitations. Moreover, the Court is convinced that the facts of the instant case call for application of such doctrine.

The pertinent facts in this case can be stated briefly. On or about June 28, 1966, the United States of America, acting through the United States Treasury Department, Commander, Eighth Coast Guard District, New Orleans, Louisiana, and Mike Bradford and Co., Inc. (hereinafter referred to as "Bradford"), a Florida corporation, entered into a written contract, No. TO8cg–4568, whereby Bradford agreed to furnish all labor, materials and equipment, and perform the work necessary for the construction of an aircraft hangar and office and other contractually stated federal facilities at the United States Naval Air Station called Callendar Field in Belle Chasse, Louisiana. Pursuant to applicable federal law, the Miller Act, Bradford supplied the requisite performance and payment bonds to the United States with Continental Casualty Company (hereinafter referred to as "Continental") of Chicago, Illinois as surety for the bonds. Subsequent to this agreement, Bradford entered into a subcontract with Atlas Erection Company, Inc. (hereinafter referred to as "Atlas"), a Louisiana corporation, on September 26, 1966, relative to the performance of certain work by Atlas for the principal contractor, Bradford, under the aforementioned contract TO8cg-4568.

Atlas performed all of its required subcontract work, beginning the contracted task about September 28, 1966, and completing the last of the work on November 15, 1967. Though not relevant to the issues sub judice, Atlas apparently performed some corrective work as late as January, 1968.

Some time in March or April of 1968 Bradford defaulted in the performance of the prime contract, and Bradford's surety, Continental, undertook the completion of the project.

Continental employed the Kansas firm of Contract Surety Consultants (hereinafter referred to as "CSC") to investigate all outstanding claims and to pay such claims proven to be valid. Although Bradford had made some payments to Atlas under their subcontract, Atlas still was owed a substantial amount of money at the time Bradford defaulted.

By letter dated April 2, 1968, Atlas was notified to forward all invoices and correspondence that related to the Bradford default to CSC's New Orleans, Louisiana, division. Thereafter, a regular tripartite stream of communications, both verbal and written, developed between Atlas, Continental and CSC. While it is unnecessary for the Court to enumerate each exchange between these parties from April 2, 1968, until August 4, 1969, when Atlas filed this suit, a chronological specification of certain correspondence is essential to achieve a perspective of the facts and law involved in this case.

On August 13, 1968, Atlas received from CSC a check in the amount of $152.07 in payment of several of Atlas' invoices, plus a letter by CSC requesting

initiate suit on the bond before the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. 40 U.S.C. § 270b(b).

supplemental information to aid in the disposition of outstanding claims. By letter dated October 3, 1968, to Atlas, CSC agreed that $9,045.01 of Atlas' claim was valid and CSC proposed to pay this sum. CSC further stated in the same letter that a draft "in the amount of $9,045.01 will be obtained and forwarded to you (Atlas) with the express understanding you are in no way waiving any rights which you may have concerning unpaid or backcharge items." In closing, CSC wrote: "We will continue our efforts at resolution with others whereby [sic] your contract is involved and appreciate your continued cooperation in this regard." One week later, Atlas persuaded CSC to pay an additional $4,743.00, based on a separate contract from the one at issue, and thus an increased draft of $13,788.01 was mailed to Atlas on November 12, 1968. Accompanying the partial payment to Atlas was a letter advising Atlas of CSC's continuing endeavors in the investigation to achieve a final resolution of the disputed claims. It may or may not be coincidental that this letter arrived practically one year to the day from the last work performed by Atlas on November 15, 1967. November 16, 1968, was, of course, the last day for Atlas to file a Miller Act claim if the original one year filing period applied, but Atlas did not file suit in this Court or any other court prior to this deadline.

Thereafter, sundry telephone conversations to inquire about Atlas' unpaid claim were made between Atlas and CSC during the period of November, 1968, through May, 1969. Representatives of CSC continued to advise Atlas that CSC still was investigating the disputed portion of Atlas' claim and that when CSC obtained all the necessary data, then CSC would determine what monies Continental owed to Atlas.

On June 16, 1969, counsel for Atlas intervened as a negotiator for Atlas in pursuit of collecting the remaining portion of its claim. Exactly one week aft-

er the appearance of Atlas' counsel in these proceedings, CSC sent Atlas and its counsel a detailed breakdown of the pending claim and an offer by CSC, as Continental's agent, to execute final settlement of the matter in the amount of $3,902.10. While the June 23, 1969, letter did allude to the provisions of the Miller Act, neither Continental nor CSC had yet raised the affirmative defense of peremption. Rejecting the suggested compromise two weeks later, Atlas, through counsel, counteroffered to settle for $6,200.00, stating that if CSC failed to accept such counteroffer, Atlas proposed to sue Continental for the entire $8,226.90 claim. This letter, referring to a telephone conversation between the same parties on the previous day, is chronologically the first writing between the parties dealing directly with the time limits in this Miller Act claim.

By letter of July 25, 1969, more than twenty months after Atlas had completed its work under the subcontract with Bradford, Continental declined any further payment to Atlas, based on the expiration of the one year period for filing suit prescribed by the Miller Act, 40 U.S.C. § 270b(b). Atlas followed by filing the present suit on August 4, 1969.

The parties do not dispute the fact that the Court maintains jurisdiction over the action at bar pursuant to 40 U.S.C. § 270a et seq. Nor is disagreement between the litigants founded on the contents of the various transactions that developed; rather, the parties disagree as to what should be gleaned from these transactions, and the legal effect thereof.

Plaintiff Atlas contends that it acted in good faith at all times and that Atlas relied upon the respective representations made by Continental and its agent, CSC, to the effect that all of Atlas' valid invoices would be paid in full upon the completion of defendant's investigation. Negotiations for settlement between the parties persisted beyond the one year filing period, and, furthermore, the de-

fendant did not refuse to pay Atlas until the time for filing suit had passed. Consequently, Atlas argues, Atlas relied upon these representations to its detriment in the postponement of filing suit. Continuing its line of reasoning, Atlas submits that the doctrine of equitable estoppel defeats the defendant's assertion that the passage of the one year filing period of the Miller Act had perempted Atlas' claim.

Defendant, Continental, presents a two-pronged argument: the first aspect is directed to the facts, the second to the law. With respect to the factual argument, Continental submits that its partial payments and correspondence to Atlas were qualified by the defendant's statements that Atlas was not waiving any of its Miller Act rights concerning the disputed claim if Atlas accepted payment for the undisputed claim and/or if Atlas continued to negotiate to achieve a settlement of the disputed claim. Continental maintains that it never requested or encouraged Atlas to forbear filing its Miller Act suit timely, and Continental unequivocally denies that it lulled or intended to lull Atlas into a false sense of security until the one year filing period elapsed. The second part of Continental's argument challenges the legal possibility of applying the estoppel concept to the Miller Act. Continental asserts that filing of suit within one year is not an ordinary statute of limitations but is a condition precedent to the exercise of rights under the Miller Act. Inasmuch as one year passed before Atlas filed any suit on its Miller Act claim, Continental concludes that such claim has been perempted and that this right of action can never be revived. Continental similarly disputes the concept that equitable considerations like estoppel could resuscitate the extinguishment of a claim under the Miller Act once the statutory time period has run.

In McWaters and Bartlett v. United States ex rel. Wilson, 272 F.2d 291 (10th Cir. 1959), a Miller Act case, the court, although it did not find estoppel as a matter of fact, stated a working definition of estoppel:

Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were [sic] found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay. To constitute estoppel there must be deception relied upon by the other to his detriment. 272 F.2d at 296.

The courts are not in full agreement on the issue of whether compliance with the limitation provisions of 40 U.S.C. § 270b(b) is an absolute condition precedent to recovery. For a discussion of the juridical conflict, see Annot., 11 A.L.R.Fed. 922 (1972); Annot., 10 A.L.R.Fed. 553 (1972). A number of courts have ruled that the filing period in the Miller Act is not to be viewed as an ordinary statute of limitations to which equitable doctrines might apply. Rather, they have held that compliance with this time provision is a condition precedent to the institution of a Miller Act claim. See, United States ex rel. Dover Elevator Co. v. General Ins. Co., 339 F.2d 194 (6th Cir. 1964); United States ex rel. T. Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc., 272 F.Supp. 962 (E.D.N.Y.1967); United ed States ex rel. Flynn's Camden Electric Supply Co. v. Home Indem. Ins. Co., 246 F.Supp. 27 (E.D.Pa.1965); United States ex rel. General Electric Co. v. Southern Constr. Co., 236 F.Supp. 742 (W.D.La.1964).

The increasing majority of courts, however, have rejected the theory that filing suit within the one year period is a condition precedent to recovery under the Miller Act, and have held that the time limitation provision of the Miller Act is subject to the doctrine of estop-

pel. *See,* United States ex rel. Nelson v. Reliance Ins. Co., 436 F.2d 1366 (10th Cir. 1971); United States ex rel. Humble Oil & Refining Co. v. Fidelity & Casualty Co. of New York, 402 F.2d 893 (4th Cir. 1968); United States ex rel. E. E. Black, Ltd. v. Price-McNemar Constr. Co., 320 F.2d 663 (9th Cir. 1963); McWaters and Bartlett v. United States ex rel. Wilson, *supra*; Sam Finley, Inc. v. Pilcher, Livingston & Wallace, Inc., 314 F.Supp. 654 (S.D.Ga. 1970). *See also,* General Ins. Co. of America v. United States, 406 F.2d 442 (5th Cir. 1969), adhered to on rehearing, 409 F.2d 1326, cert. denied, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969).[2] *Cf.* Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

Defendant argues that the Court should be guided by United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L. Ed. 893 (1914), where the Supreme Court, interpreting predecessor statutes to the Miller Act, held that the suit-filing provision is a condition precedent to recovery. While this Court acknowledges that there are similarities between the language of the Miller Act and its statutory forerunners, the Court does not deem the earlier statutes controlling in the action at bar, particularly in light of the case law that rejects such a requisite when there are extenuating circumstances. *See, e. g.,* United States ex rel. Nelson v. Reliance Ins. Co., *supra*; United States ex rel. E. E. Black Ltd. v. Price-McNemar Constr. Co., *supra*; Sam Finley, Inc. v. Pilcher, Livingston & Wallace, Inc., *supra*.

▪ The Miller Act is a type of statute that created a new right which was nonexistent under common law. At the time the *McCord* opinion was written, the general view was apparently that the

principles of estoppel against reliance upon statutes of limitation were not applicable to statutes that created a cause of action where none existed before and limited the time for commencing suit thereunder. *See, e. g.,* Winfree v. Northern Pacific Railway Co., 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518 (1912), Pollard v. Bailey, 87 U.S. (20 Wall.) 520, 22 L.Ed. 376 (1874), Partee v. St. Louis & San Francisco R. R. Co., 204 F. 970 (8th Cir. 1913). *See also,* Central Vermont R. R. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1915); Omin v. Baltimore & O. S. W. R. Co., 8 Ohio App. 161 (1917); Bement v. Grand Rapids & I. R. Co., 194 Mich. 64, 160 N.W. 424 (1916). This Court concludes that such general view is no longer valid with regard to federal laws, in light of the reasoning of the Supreme Court in 1959, in Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S. Ct. 760, 3 L.Ed.2d 770. *Cf.,* Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253 (4th Cir. 1949), cert. denied, 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343 (1950).

In *Glus* the Court had to decide the applicability vel non of estoppel against the asserted defense of time limitation under the Federal Employers' Liability Act. Like the Miller Act, the FELA statute created a cause of action where none existed before and limited the time for commencing suit thereunder. The Supreme Court in *Glus* held that the estoppel principle is available against the statute of limitations in suits governed by the type of statutory language found in the Federal Employers' Liability Act. Quoting a much earlier policy statement by the Court in Union Mut. Life Ins. Co. v. Henry Wilkinson, 80 U.S. (13 Wall.) 222, 233, 20 L.Ed. 617, 622 (1872), the *Glus* court observed:

"The principle is that where one party has by his representations or his con-

---

2. Analyzing the Fifth Circuit decision of General Ins. Co. of America v. Audley Moore & Sons, *supra*, the court in *Sam Finley, Inc.* wrote: "This decision *(General Ins. Co. of America)* did not follow the line of cases to the effect that the filing of suit within a year is a condition precedent to the exercise of rights under the Miller Act." 314 F.Supp. at 656, n. 3.

duct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice. . . ." 359 U.S. at 234, 79 S. Ct. at 762, 3 L.Ed.2d at 733.

The *Glus* rationale has been employed in Miller Act litigation. *See,* United States ex rel. Nelson v. Reliance Ins. Co., *supra,* 436 F.2d at 1370; United States ex rel. E. E. Black Limited v. Price-McNemar Constr. Co., *supra,* 320 F.2d at 665–666.

■ This Court believes that the more sound approach is that taken by those courts which have interpreted the law so as to permit the doctrine of equitable estoppel to be invoked against a Miller Act defendant who pleads as a defense that the action was not commenced within the statutory time limits of the Miller Act. Hence, if the circumstances of the case warrant, a defendant, such as Continental, may be estopped from asserting the statute of limitations as a defense. United States ex rel. Nelson v. Reliance Ins. Co., *supra;* United States ex rel. E. E. Black, Ltd. v. Price-McNemar Constr. Co., *supra.*

■ The facts of record in the instant case have established that Atlas was induced to forbear litigation until after the one year period prescribed by the Miller Act had expired. Without reiterating the facts, this Court finds that the cause of Atlas' delay in filing its Miller Act claim rests on a combination of payments, representations, and extensive correspondence to Atlas by Continental and its agent CSC that occurred throughout and beyond the one year

statutory requisite. Almost from the beginning, Continental, through CSC, assured Atlas that all valid invoices would be paid upon the completion of the former's investigation, and, therefore, requested Atlas' continued cooperation in an amicable resolution of the claim. After the time for suit under the Miller Act passed, Continental, apparently believing itself to be protected against litigation, broke off negotiations with Atlas and denied liability based on the expiration of the Miller Act time limit. In summary, the Court concurs with the position taken by Atlas that Continental should not be able to deny liability by staving off the litigious intentions of Atlas until the termination of the Miller Act filing period through partial payments, continuing correspondence, and settlement offers to Atlas.

It is with the above discussion in mind that the Court returns to the previously quoted definition of estoppel vis-a-vis a disputed claim which the *McWaters* court espoused. Upon matching the evidence of this case with the terms of the estoppel definition, this Court concludes that all factors are readily apparent to activate the principle of equitable estoppel in preventing Continental's use of the time limit defense. It seems certain from the surrounding circumstances that had Continental and CSC not painted such a rose-colored and confident picture to Atlas with respect to the recovery of the latter's valid claims, then Atlas would not have delayed institution of its Miller Act suit beyond the statutory time limit in the hope of achieving an amiable disposition of the disputed invoices. Thus, the Court concludes that the instant suit by Atlas is not barred by the time limitation provision of the Miller Act, and, therefore, that it is entitled to recover from Continental.

The parties hereto have agreed and stipulated that the quantum of Atlas' recovery, in the event of a judgment in its favor on the issue of liability, be fixed at the amount of $6,125.15.