UNITED STATES of America for the Use of B & B WELDING, INC., Plaintiff,

v.

RELIANCE INSURANCE COMPANY OF NEW YORK, Defendant.

No. CV 90–0232.

United States District Court, E.D. New York.

Aug. 3, 1990.

**130**

Jaffe & Segal by Lawrence Fechner, New York City, for plaintiff.

Hart & Hume by Mark S. Gamell, James E. Scranton, New York City, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Use-plaintiff B & B Welding, Inc. ("B & B") brings this action under the Miller Act, 40 U.S.C. § 270b, against defendant Reliance Insurance Company of New York ("Reliance"), the surety on a payment bond on a contract entered into between the United States and Danaco Contractors, Inc. ("DCI"), as general contractor, for the construction of a chilled water facility at Brookhaven National Laboratory ("BNL") in Brookhaven, New York ("the BNL Project"). B & B seeks to recover amounts owed it by DCI for materials and labor furnished on the BNL Project as a subcontractor for DCI. Presently before the Court is Reliance's motion for summary judgment[1] on the ground that the action is barred by the Miller Act's one-year statute of limitations. *See* 40 U.S.C. § 270b(b). For the reasons below, the motion is granted.

### I. *Background*

The complaint alleges that DCI and the United States entered into their contract sometime prior to June 28, 1987. In addition, upon entering the contract with the United States, DCI, as principal, and Reliance, as surety, delivered to the United States a payment bond guaranteeing payment to suppliers of material and labor in the prosecution of the BNL Project. Thereafter, on or about June 28, 1987, B & B entered into a contract with DCI to provide labor and materials for the project. The work B & B agreed to complete included, *inter alia*, the structural steel and metal roof and door decks. B & B alleges that it completed performance under the contract but that DCI still owes it $97,441.83.[2] Because DCI has failed to pay the amount allegedly due under the contract, B & B seeks to recover from Reliance as surety on the payment bond. B & B also states that it has satisfied all conditions precedent to bringing this action.

The complaint alleges that the date on which B & B last supplied labor or material was June 30, 1988. This action was commenced on January 23, 1990, nearly nineteen months later. Section 270b(b) of the Miller Act, however, provides:

> Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed ..., but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by [such person]. ...

40 U.S.C. § 270b(b). It is apparent that based on the allegations in the complaint, this action is not timely. Faced with a statute of limitations defense, B & B argues that statements and representations made by representatives of Reliance to B & B's attorney, Lawrence Fechner ("Fechner"), on June 23 and 30, 1989, and thereafter, caused B & B to delay commencing this action. Hence, B & B argues that Reliance should be estopped from asserting

---

1. Reliance initially brought this motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6), but because the parties submitted matters outside the pleadings which were considered by the Court, the Court notified the parties that it was treating the motion as one for summary judgment, and the parties were given sufficient opportunity to submit additional material pertinent to a summary judgment motion under Fed. R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).

2. The record indicates that DCI has since filed for bankruptcy.

the Miller Act's statute of limitations as a defense.

In support of its estoppel argument, B & B contends that on June 23, 1989, Fechner spoke to George Brotherston ("Brotherston"), who was hired as a consultant by Reliance, in an attempt to resolve B & B's claim against DCI. By affidavit, Fechner states that Brotherston had set up a meeting at the BNL job site for June 28, 1989 between Reliance and representatives of B & B, and had requested that someone from B & B with signatory authority be present at the meeting "since checks would be issued at that time in settlement of existing claims." Affidavit of Lawrence Fechner dated March 28, 1990, para. 12. However, at the June 28 meeting no checks were issued in settlement of the claim. Fechner was told the next day, June 29, 1989, that B & B had not been paid at the June 28 meeting. *Id.* para. 14.

On June 30, 1989, Fechner spoke to Rick Levesque ("Levesque"), an attorney in Reliance's bond claim department, who suggested to Fechner that he file a formal claim against the bond on behalf of B & B. *Id.* para. 16. Consequently, by letter dated July 18, 1989, Fechner submitted B & B's formal claim to Levesque. *Id.* ex. D. In response, by letter to Fechner dated August 14, 1989, Levesque stated:

This will confirm receipt of your July 18, 1989 correspondence wherein you presented a claim in the amount of $113,-655.83 against the ... [payment] bond. To facilitate our investigation of your claim we request that you supply the following:

1. Copy of the subcontract and/or purchase order.

2. Invoices and delivery receipts.

3. A statement of account.

4. Copies of all correspondence....

While awaiting these documents we shall initiate our investigation by contacting DCI ... to determine its position.

If this matter has been or is in the process of being resolved, we would appreciate your notifying us.

... We specifically reserve any and all rights available under the provisions of the Miller Act relating to suit limitations. Moreover, by letter dated September 27, 1989, Levesque advised Fechner that he had not yet received word on DCI's position as to B & B's claim, and reminded Fechner that Reliance's position was that any claim by B & B against Reliance was barred by the Miller Act's statute of limitations. Levesque again reiterated this in a letter to Fechner dated November 6, 1989. In the November 6 letter, Levesque also indicated that the June 28, 1989 meeting between Reliance and B & B was not scheduled for the purpose of resolving the claim, but was part of Reliance's investigation into DCI's obligations following termination of DCI by BNL. Nevertheless, as noted above, this action was not commenced until January 23, 1990.

Reliance maintains that the last day on which B & B performed labor or supplied material on the BNL Project was actually March 1, 1988, but in no event was it later than June 2, 1988, the date that B & B completed punch list work, *i.e.*, work to repair or correct defects in original work. Reliance refers the Court to a letter dated August 5, 1989 from B & B's president, Robert Benza ("Benza"), to DCI's vice-president, Dennis Nemick ("Nemick"), which reads in part:

Both of the punch lists referred by you were acknowledged by B & B, and work was completed and accepted by Mr. Bill Britz of BNL, as the work was performed in his presence. Please reference our Daily Job Report, dated June 2, 1988....

We have enclosed a copy of BNL's punch list, dated May 20, 1988, with an explanation next to each item. *It is clear that we have completed our contract in a respectable manner.* [Emphasis added].

The Court notes that B & B failed to provide any support for the allegation in the complaint that the last day labor was performed was June 30, 1988. Reliance therefore contends that this action is unquestionably barred by the one-year statute of limitations. Apparently, Reliance

maintains that there can be no estoppel under these circumstances since the facts allegedly supporting the estoppel occurred no earlier than June 23, 1989, more than one year after completion of any work (original work or punch list work) by B & B. Nevertheless, Reliance denies that it in any way misled B & B into believing that it was going to pay the claim.

However, at oral argument on June 19, 1990, Fechner argued that B & B had in fact continued to perform labor under its contract with DCI until sometime in August 1988, and produced a letter dated December 29, 1988 from Benza to Nemick wherein Benza stated:

> We are in receipt of your latest punch list which is dated 11–21–88. Please be advised all item's [sic] on the list were previously addressed in our letter to you on 8–5–88.... It clearly show's [sic] what our position on each of these item's [sic] are [sic].
>
> Once again, the only item which would possibly require our attention would be the protection bollard, [sic]—which are in our shop waiting to be installed. We would install them only if you paid [sic] B & B Welding its monies, which you have received and in effect have stolen from us.

In light of Fechner's representation to the Court and of the December 29 letter, the parties were permitted to submit supplemental affidavits and briefs on the motion.

In its supplemental papers, B & B contends that the protection bollards (which, according to the papers, are also known as pipe bumpers) were part of the contract between it and DCI, and that labor was performed in preparing the bollards for the BNL Project as late as August 12, 1988, notwithstanding the bollards were neither delivered to the job site nor used in the actual prosecution of the work. B & B offers records purportedly indicating that work was done on August 3, 4, and 12, 1988 by B & B vice-president Michael Hus-

band ("Husband") in procuring and preparing the bollards for the BNL Project.[3]

Reliance, on the other hand, maintains that DCI was unaware that B & B had the bollards until it received the December 29, 1988 letter from Benza, and that DCI had purchased bollards elsewhere in reliance on the assertion in the August 5, 1988 letter from Benza that B & B had completed its work under the contract. Reliance argues that B & B should be estopped from maintaining that it continued to perform work under the contract in procuring and preparing the bollards (purchasing, galvanizing, etc.). In addition, Reliance suggests that work billed by Husband on August 3 and 4, 1988 could have been in preparing the August 5, 1988 letter from Benza to Nemick rather than in preparing the bollards. Further, Reliance points out that certain work allegedly done on the bollards, specifically, the galvanizing of the bollards, was not even called for in the contract, indicating that the bollards were not for the BNL Project.

As noted above, B & B's estoppel argument is based on representations by Reliance to B & B which occurred no earlier than June 23, 1989. Thus, only if the last day of performance was on or after June 23, 1988 can B & B even raise the estoppel issue. Hence, one potential issue is whether B & B should be allowed to maintain that the last day of performance (the date the statute of limitations began to run) was August 12, 1988, notwithstanding B & B had previously told DCI (by the August 5, 1988 letter) that it had completed performance under the contract. As discussed below, the Court need not address this issue because the Court finds that B & B has not raised a genuine issue of material fact to support its claim of equitable estoppel even if it is assumed that the last day of performance was August 12, 1988.

## II. *Discussion*

In the context of actions brought under the Miller Act, the doctrine of equitable estoppel has been stated as follows:

---

**3.** By affidavit, Husband states that he cut the material for the bollards on August 3, delivered the cut material to another company for galvanizing on August 4, and picked up the galvanized material from the other company on Au-

gust 12. He attaches his time sheets indicating that he spent a total of sixteen hours on all three days, with all hours billed to B & B's contract with DCI for the BNL Project.

"Estoppel arises where one, by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct. Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found to be just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay."

*United States ex rel. Nelson v. Reliance Ins. Co.*, 436 F.2d 1366, 1370 (10th Cir. 1971) (quoting *McWaters & Bartlett v. United States ex rel. Wilson*, 272 F.2d 291, 296 (10th Cir.1959)); *United States ex rel. Humble Oil & Ref. Co. v. Fidelity & Casualty Co.*, 402 F.2d 893, 897 (4th Cir.1968) (same). Though the Tenth Circuit in *McWaters & Bartlett v. United States ex rel. Wilson*, 272 F.2d 291 (10th Cir.1959), stated further that "[t]o constitute estoppel there must be deception relied upon by the other to his detriment," *id.* at 296, the Fourth Circuit in *Humble Oil* held that actual fraud or deception need not be shown, *see Humble Oil & Ref. Co.*, 402 F.2d at 898. As the Fourth Circuit held, estoppel requires a "representation, reliance, change of position and detriment." *Id.*

Assuming that B & B's last day of performance under its contract with DCI was August 12, 1988, the statute of limitations on its claim against Reliance would have expired on August 12, 1989 unless Reliance is estopped from asserting the limitations period as a defense because of representations it made to B & B. B & B contends that it need not show actual fraud, but only that Reliance, by its statements or conduct, misled B & B to its detriment. Even accepting B & B's statement of the rule, B & B has failed to establish a genuine issue of material fact supporting its claim of equitable estoppel.

A review of the record reveals that even assuming representations by Reliance to Fechner on June 23 and 30 misled B & B into believing that Reliance would acknowledge and pay B & B's claim, the August 14, 1989 letter from Levesque to Fechner should have made clear to B & B that that was not Reliance's position. The letter itself contained no representations or promises which might reasonably be expected to have induced Fechner's or B & B's reliance. *See General Ins. Co. v. United States ex rel. Audley Moore & Son*, 406 F.2d 442, 444 & n. 5 (5th Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969). Rather, the letter might reasonably be expected to have caused Fechner and B & B to question their purported reliance on earlier representations by Reliance. Moreover, the letters of September 27 and November 6, 1989 from Levesque to Fechner, if anything, further detract from any claim by B & B that Reliance led it to believe that its claim would be acknowledged and paid. B & B alleges that it was not aware until November 6, 1989 that its claim would not be paid despite the fact that Reliance notified B & B in the August 14 letter that it was reserving its rights under the Miller Act, and, in the September 27 letter, that it believed the claim was already barred by the statute of limitations. The November 6 letter, on which B & B apparently relies, essentially reiterated Levesque's statements in the September 27 letter. Even if the limitations period was tolled beginning the last week in June 1989, approximately one and one-half months before it would have expired on August 12, 1989, B & B clearly could not have justifiably relied on Reliance's representations in foregoing suit until January 1990. Without implying that suit must necessarily be brought within some particular time if a plaintiff is to successfully invoke the estoppel doctrine, this Court finds that B & B waited too long to commence this action from the time it should reasonably have become apparent that Reliance was neither representing or promising that it would acknowledge and pay the claim.

In addition, this Court has difficulty in accepting B & B's contention that the alleged statement by Brotherston on June 23, 1989, that B & B make available someone with signatory authority for the June 28 meeting, justifies its delay in filing suit. As noted above, no check was issued at the meeting; nor is there evidence that ac-

knowledgment of the claim and payment were to be forthcoming. Levesque's suggestion to Fechner, in their June 30, 1989 conversation, that B & B file a formal claim against the bond, is far from indicating an assurance by Reliance that it would acknowledge and pay the claim. Nor does the July 18, 1989 letter from Fechner to Levesque, which served as B & B's formal claim against the bond, indicate that Fechner understood any earlier representations by Levesque as assurances that Reliance would acknowledge and pay the claim.

## CONCLUSION

Based on the reasons above, B & B's claim is barred by the Miller Act's one-year statute of limitations. B & B has failed to raise a genuine issue of material fact supporting its claim that Reliance be estopped from asserting the statute of limitations as a defense. Accordingly, Reliance's motion for summary judgment is granted, and the complaint is dismissed. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.