**UNITED STATES of America, for the Use and Benefit of TAYKINSWELL, INC., a body corporate**

v.

**BENCON CONSTRUCTION CO., Inc., a corporation**

and

**The Aetna Casualty and Surety Company, a body corporate.**

**Civ. No. 15568.**

United States District Court
D. Maryland.

Dec. 28, 1965.

---

John W. Marcuse, Baltimore, Md., and Warren E. Magee and Thomas G. Laughlin, Washington, D. C., for plaintiff.

William A. Fisher, Jr., Baltimore, Md., and Alexander M. Heron, Washington, D. C., for defendants.

THOMSEN, Chief Judge.

This action under the Miller Act, 40 U.S.C.A. 270a et seq., was filed on May 18, 1963. Defendants have pleaded as a second defense that the claim is barred by section 270b, as amended in 1959, which now provides that "[N]o such suit shall be commenced after the expiration ·of one year after the day on which the last of the labor was performed or material was supplied" by the use-plaintiff.

The parties agreed, and the Court ordered, that the issue raised by the second defense should be heard and decided separately, in advance, as permitted by Rule 42(b), F.R.Civ.P. Both sides offered testimony and other evidence. At the conclusion of the hearing the Court dictated findings of fact and called for briefs, stating that it would amplify its findings, if necessary, to cover the points raised by the briefs.

### Facts

Use-plaintiff, Taykinswell, Inc. (Taykinswell), and defendant, Bencon Construction Co., Inc. (Bencon); are Maryland corporations. Defendant Aetna Casualty and Surety Company (Aetna) is Bencon's surety on the Miller Act bonds issued pursuant to the contract described in the next paragraph.

On September 27, 1962, Bencon entered into a contract with the United States, under which Bencon agreed to furnish all labor and materials and to perform all

work required for construction of the local flood protection project known as Oxon Run Improvements, together with all required or pertinent work to be completed at the Potomac River Basin at Forest Heights, Maryland. On or about December 3, 1962, Bencon subcontracted to Taykinswell the furnishing of "all labor and materials, scaffolding, tools and equipment" for the performance of "all work necessary to complete the Clearing & Grubbing, Stripping, Excavation & Compacted Fill & Construction, maintenance and removal of such temporary haul roads as may be required" under the plans and specifications applicable to the said local flood protection project at Forest Heights, Maryland. The provision in article 20 of the sub-contract form authorizing the contractor on terminating the employment of the sub-contractor to "take possession of * * * all materials, tools and appliances" of the sub-contractor was deleted.

Beginning on December 3, 1962, Taykinswell furnished some labor and materials for the work covered by its sub-contract. On April 18, 1963, Bencon mailed a letter to Taykinswell, terminating the sub-contract. The letter ended with the following sentence: "Please see to it that you cease operations immediately and that all your men and equipment are off the job not later than midnight of the day when you receive this letter." The letter was received by Taykinswell on Friday, April 19. Taykinswell contends that the termination of the sub-contract was wrongful and a breach of the sub-contract, but that issue is not before the Court at this time. Pursuant to advice from Taykinswell's lawyer, James Taylor, Taykinswell's president and general superintendent, and some of its employees went to the job on Monday and Tuesday, April 22 and 23, and attempted to work. Taykinswell had an adequate opportunity to remove its equipment and unused material on those days. It did not do so, but indicated that it intended to stay on the job; so on April 24, at the request of Bencon, the National Capital Park Police told Taylor that he would be ejected as a trespasser. Taylor, therefore, paid

off the Taykinswell employees for work done up to that time, and then or shortly thereafter removed from the site all of the equipment which Taykinswell owned and some of the rented equipment, but left certain items, namely, a dragline and some trucks which Taykinswell had rented, a few mats, oil tanks and oil drums and the shed in which they were stored, four pieces of 54 inch Cenviro pipe, and some corrugated pipe. Bencon promptly contracted with Jet Contracting Corporation to perform the remainder of the work covered by the Taykinswell subcontract.

Taykinswell contends that both before and after May 18, 1963, Bencon and Jet used the material and equipment which it had left at the site in completing the work covered by the sub-contract and, therefore, that Taykinswell should be considered to have supplied equipment and materials after May 18, 1963, one year before the suit was filed.

The Court finds with respect to both the dragline and the trucks that shortly after April 24 and before May 18 new rental agreements were entered into between Bencon or Jet and the respective lessors which had the effect of a novation; that the Taykinswell leases were terminated; and that under the facts shown by the evidence neither the dragline nor the trucks were supplied or furnished by Taykinswell within the meaning of section 270b after April 25, 1963.

The mats which were left on the job were used by Jet for a couple of weeks, but sometime before May 18 they were removed by Taykinswell, and Jet used other mats thereafter.

Taykinswell failed to prove that the oil and grease in the tanks or drums left at the site were used by Bencon, Jet or anyone else in connection with the work covered by the sub-contract, or that they were used at all after May 18, 1963. The shed had been built with lumber furnished by Bencon; it does not appear whether Taykinswell or Bencon put it up. In any event, Taykinswell failed to prove that it was used by Bencon or Jet

either before or after May 18. There was some evidence of vandalism with respect to the shed and its contents, but no evidence to show that Bencon was responsible. Taykinswell had ample opportunity on April 19, 22 and 23 to remove the tanks, drums, oil, grease and any part of the shed or its contents which belonged to Taykinswell.

Taykinswell left four pieces of 54 inch diameter Cenviro pipe in twelve inch lengths on the site. Two of these pieces were lying on the ground, had never been used and never were used; two had been used to afford drainage or carry a stream under a temporary bridge. Some corrugated metal pipe of 24 inch diameter had originally been used for this purpose but proved inadequate and the larger pipe was placed over the smaller. Jet proceeded with its work by a different method, which eliminated the need for the temporary bridge; it was not used after May 18, 1963. Taykinswell had the opportunity to remove the pipe if it had wished to do so. The removal of the pipe under the road would have been a difficult operation, and probably would have cost more than the salvage value of the pipe.

Taykinswell had also used some corrugated pipe in building service-haul roads some distance from the bridge area. The corrugated pipe in these roads remained in place and the roads were used after May 18 as well as before May 18. Taykinswell had also cut down certain trees near the site which were used to construct corduroy roads over muddy places. These remained in place and were used by trucks both before and after May 18. Taykinswell made no effort to remove the timbers or the corrugated pipe. Such removal would have cost more than any possible salvage value, and Taykinswell's attorney had advised it to stay on the job and not to remove any material.

### Discussion

In view of the findings of fact, the issue narrows down to the question whether the presence of logs forming a corduroy road and the presence of some pieces of corrugated iron pipe apparently serving drainage purposes in connection with the roads, placed in position before April 24, 1963, constitute the furnishing of material subsequent to May 18, 1963, because they remained on the site and served the purpose for which they were installed after that time.

The logs and the pipe were material, even though they were not to be physically incorporated in the final work. Title Guaranty & Trust Co. of Scranton, Pa. v. Crane Company, 219 U.S. 24, 31 S.Ct. 140, 55 L.Ed. 72 (1910). This is particularly true since Taykinswell's subcontract covered the "construction, maintenance and removal of such temporary haul roads as may be required". The logs and pipe were furnished for the construction and maintenance of such roads. They had been delivered and put in place before April 24. Taykinswell did not maintain the roads after that date and did not remove them.[1]

Section 270b(a) provides that any person who has not been paid " * * * before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made, shall have the right to sue on such payment bond * * * ". It further provides that any person not having a direct contractual relationship with the contractor shall have a right of action " * * * upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made * * * ".

As amended in 1959, section 270b(b) provides with respect both to sub-contractors and to persons furnishing labor or material to them: " * * * [N]o such suit shall be commenced after the expiration of one year after the day on

---

1. This distinguishes the instant case from United States to Use of Betts v. Continental Casualty Co., W.D.Pa., 230 F. Supp. 557 (1964), cited by Taykinswell.

which the last of the labor was performed or material was supplied by him."

 Each of these requirements relates to the last day upon which such material was furnished. See Noland Company v. Allied Contractors, Inc., 4 Cir., 273 F.2d 917 (1959); United States for Use and Benefit of J. A. Edwards & Co., Inc. v. Peter Reiss Construction Corp., 2 Cir., 273 F.2d 880 (1959); Security Insurance Company of New Haven, Conn. v. United States, for Use of Haydis, 9 Cir., 338 F.2d 444 (1964); United States for Use of Atkins v. Reiten, 9 Cir., 313 F. 2d 673 (1963).

Taykinswell cites cases dealing with the rental of trucks and other equipment for use on the job. Such rentals have consistently been held to be covered by the bond. See, e. g., Illinois Surety Company v. John Davis Company, 244 U. S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917); United States to Use of Norfolk Southern R. Co. v. D. L. Taylor Co., 4 Cir., 277 F. 945 (1921), affirming E.D. N.C., 268 F. 635 (1920). This Court has found, however, that the rental contracts which Taykinswell had made for the dragline and the trucks were terminated before May 18, 1963, and new rental contracts entered into by Bencon or Jet.[2] Taykinswell argues that these authorities also support its claim with respect to the pipe. It is true that the Miller Act should be liberally construed to accomplish its remedial purpose, but that rule of construction cannot change material into equipment, nor justify applying the rules applicable to equipment in place of the rules applicable to material. Cases dealing with punch list items or the amount of material furnished are not in point, because Taykinswell did not maintain the roads or do any work or furnish any materials after April 24, 1963.

### Conclusion

This action is barred by the one year limitation period contained in 40 U.S.C.

A. 270b(b). No question of any other right or obligation between Taykinswell and Bencon is before the Court.

Judgment will be entered in favor of defendants.

---

2. There are no facts bringing this case within the ruling in United States for Use of Way Panama, S.A. v. Uhlhorn International, S.A., Canal Zone, Balboa Division, 238 F.Supp. 887 (1965).