UNITED STATES of America for the Use and Benefit of BAGNAL BUILD-ERS SUPPLY COMPANY, Plaintiff,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY and R. G. Martz Construction Company, Defendants.

No. 75–878.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 24, 1976.

James D. Walters, Columbia, S. C., for Bagnal Builders Supply Co.

Jackson L. Barwick, Jr., of Belser, Baker, Belser, Barwick & Toal, Columbia, S. C., for United States Fidelity and Guaranty Co., and R. G. Martz Const. Co.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION TO DISMISS

HEMPHILL, District Judge.

This is an action commenced May 27, 1975 by plaintiff, seeking recovery of defendants for goods furnished and delivered by the beneficiary plaintiff to the defendant construction company, and used by the latter in construction, alteration or the repair of barracks located at Fort Jackson in Columbia, South Carolina, which were admittedly public buildings of the United States. All parties admit that it is an action under the Miller Act (40 U.S.C. §§ 270a–e). The original contract exceeded $2,000 and in compliance with 40 U.S.C. § 270a(a)(2)[1] defendant contractor as principal and defendant insurance company as surety, executed payment bond for the protection of all persons supplying labor and materials for the prosecution of the work provided for in the contract, designated DABC23–72–0699. It is admitted that the contractor ordered from and contracted with plaintiff to purchase material from time to time for the project at a designated price, quantity and quality as called for by the contract.[2]

On June 25, 1975, defendant surety filed its motion to dismiss. On July 14, 1975 the plaintiff filed a motion for summary judgment.

It now appears that the undisputed facts are that the defendant construction company, upon its own purchase order, was furnished building materials and supplies by plaintiff which were used by the construction company in the construction, remodeling and repair of certain Army barracks at Fort Jackson, South Carolina, public buildings of the United States Government. The last shipment of materials by the plaintiff to the government contractor was on January 17, 1974. The last date which suit could have been commenced under the Miller Act was one year later, January

1. 40 U.S.C. § 270a(a)(2) provides: *Bonds of contractors for public buildings or works; waiver of bonds covering contract performed in foreign country.*

   (a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":

   (2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

2. In the motion for summary judgment the plaintiff submitted an affidavit of Milburn B. Shaw, Credit Manager for the beneficiary Bagnal, listing the materials furnished, and swearing, under oath, that the amount had not been paid in full and was due and owing; this was not refuted or denied in any way by either of the defendants, although the defendant construction company, in its initial answer, denied those paragraphs of the complaint alleging that goods were furnished and amounts due thereon. The answer of defendant Martz denies any liability, but does not plead any statute of limitations. The answer of the surety pleads the provisions of 40 U.S.C. § 270b(b) which provides:

   (b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit.

16, 1975—within the one year as set forth in the Miller Act. Defendant construction company, in order to qualify for the prime contract to remodel and repair the government buildings with the United States Army, properly procured and filed a Performance Bond issued by the defendant surety company. Efforts were made by correspondence by and between plaintiff and the defendants to collect from the defendants the unpaid account which was in the principal amount, at the time of the commencement of the suit, of $9,640.86. There crossed, between the parties, various letters in connection with the collection of the account. The suit was commenced approximately four and one-half months after the end of the one year limitation. Without objection, the correspondence was furnished to the court for its perusal, and the motion for summary judgment was accompanied by an affidavit of amount due, which was not refuted in any way. A review of the correspondence may be useful:

On December 14, 1973, the surety was notified, by letter of Milburn B. Shaw, Credit Manager of plaintiff beneficiary, that the construction company was not paying for the building material which beneficiary plaintiff had supplied. This was before the last date that building supply materials were furnished.

On January 4, 1974, the surety defendant acknowledged receipt of the December 14th communication, replying in part:

I have been in touch with R. G. Marks (sic) Construction Corp. and they advised me that this situation was taken care of immediately after receipt of your letter. I assume that by the time you receive this letter everything will be in order again. Please advise if this is not so.

By letter of February 12, 1974, Shaw wrote defendant's surety's claim department Assistant Superintendent Boyers, following up a February 8 conversation between the two and reported the dates of purchase of building materials from Bagnal. He also told Boyers that a check for $2,500.00 received from Martz was returned for insufficient funds. By this letter Bagnal notified USF&G of Martz' unpaid balance of $16,203.50 and called upon USF&G to "see this account is cleared in full," adding, "We will be happy to submit to you any invoices or other information you will need."

In a letter dated February 21, 1974, Boyers replied:

This will serve to acknowledge receipt of your letter to me dated February 12, 1974, putting us on notice of your outstanding claim of $16,203.50. We will check into this matter and advise you in due course.

On March 21, 1974 USF&G forwarded a draft of $6,562.64 to beneficiary plaintiff, stating, "This does not represent your total bill but does cover a substantial part of it."

On June 26, 1974, beneficiary plaintiff advised USF&G that Martz' balance was $9,640.86 and asked when they might expect payment. Boyers acknowledged this letter on July 9, 1974, and replied, "I will again be in touch with Mr. Martz and advise."

On July 30, 1974, Boyers and USF&G wrote to Shaw at Bagnal advising that Martz had promised to pay an additional $500.00 and further advised Bagnal that the Labor Department had frozen payment of any further funds to Martz. Boyers continued:

There is about $2500.00 which is due Mr. Martz at the present time which I was going to earmark for you but that proposition will have to wait until the Labor Department finishes its investigation.

Mr. Martz continues to maintain that he will complete the job and that he will pay you.

On October 16, 1974 Bagnal's attorney advised USF&G of his representation and requested information as to the status of the claim.

On October 24, Boyers replied by letter that the surety, despite the contract, was "still maintaining the position of 'interested bystander'" and further advised

"I do have a hold on the money, however, and the next payment that is made will be a joint draft payable to Bagnal and R. J. Martz."

On October 28, 1974, the attorney for Bagnal wrote to the Army at Fort Jackson, sending copies of the correspondence and asking that something be done about the account.

On November 2, 1974, the Army Contracting Officer wrote Martz stating "request you advise this office of your action taken to settle this account."

On April 1, 1975, Boyers wrote to Bagnal's attorney:

> Mr. Martz has assured me that he is going to take care of the bill outstanding to Bagnell (sic) Builders Supply Company. Just within the last couple of weeks, he told me he was moving his own men from Virginia in on the job to complete it as soon as possible and hopefully there will be funds available at that time.
>
> The claim is being handled by our Columbia, South Carolina Office and you may want to discuss it further with them. It is being handled by Mr. H. W. Corley and the phone number there is 252–3341.

It is to be noted that, while the answers of both of the defendants deny the amounts due, there was no contest made before this court, at the hearing held on January 8, 1976, that the debt was not due or that surety had not contracted to indemnify suppliers under the Performance Bond.

## DEFENDANTS' MOTION TO DISMISS

■ Despite the fact that only USF&G filed in this court a motion to dismiss, the court will consider the motion as made by both defendants and their actions interrelated. It can be said that, in connection with this litigation and the claim of the beneficiary plaintiff, that the act of one was the act of the other, so that USF&G's motion to dismiss may be considered a motion on behalf of both. Likewise, USF&G's correspondence may be considered as the correspondence of both because insofar as the liability was concerned, each would be acting in behalf of both, as one would not be liable without the other nor the other without the one, except for unusual circumstances.

■ Plaintiff contends, of course, that the forbearance of Bagnal was in reliance on the correspondence.[3] Had either party asked for a jury trial, this court would deny defendants' motion to dismiss, and place the case on the jury calendar. However, neither plaintiff nor defendants have asked for a jury trial and the interpretation is squarely upon this court. No party asked to submit any other evidence in connection with the alleged forbearance and the estoppel claim by the plaintiff.

Equitable estoppel is a well-established concept invoked by courts in aid of a party, who, in good faith, has relied to his detriment upon the representations of another. As early as 1938, the United States Fourth Circuit Court of Appeals, in *Tucker v. Owen*, 94 F.2d 49, held that the promise of a debtor, made during the period of a limitation,[4] and upon which the creditor relied in his forbearance to sue within the statute, operated as a fraud within the statute and constituted an act of bad faith, such that the creditor's suit filed after the limitation had run would not be barred. Again, in *Scarborough v. Atlantic Coast Line R. Co.*, 202 F.2d 84 (4th Cir. 1953), the same court considered the statute of limitations applicable under the Federal Employer's Liability Act and held that if the defendant's agent made a misstatement with intent that it be relied on by

---

**3.** The court will only rely on the correspondence which took place before the statute had run, but the other correspondence is included for purpose of completing a survey of the correspondence in this order.

**4.** The statute of limitations involved applied to what was then known as "the Heard Act," an early edition of the Miller Act.

the plaintiff and the plaintiff had in fact relied thereon, the statute could be tolled, and that the timely institution of the suit was a question for the jury under proper instructions. The Fourth Circuit faced the doctrine of equitable estoppel squarely in *United States for the Use and Benefit of Noland Company, Inc. v. Wood*, 99 F.2d 80 (4th Cir. 1938), stating:

> The doctrine of equitable estoppel is universally recognized by the courts. This doctrine can be applied in actions under the Heard Act. *U. S. v. American Bonding & Trust Company*, 4 Cir., 89 F. 925, cited with approval in *United States Fidelity & Guaranty Company v. United States*, 191 U.S. 416, 24 S.Ct. 142, 48 L.Ed. 242. To establish equitable estoppel it is not necessary that actual fraud be shown. It is only necessary to show that the person estopped, by his statements or conduct, misled another to his prejudice. *Stevens v. Ludlum*, 46 Minn. 160, 48 N.W. 771, 13 L.R.A. 270 and note, 24 Am.St. Rep. 210. As we said in *Kansas City Marble & Tile Company v. Penker Construction Company et al.*, 4 Cir., 86 F.2d 287, 288:
>
> > And we agree with the judge below that petitioner is estopped from asserting a claim against the bond for the materials furnished, since it is clear that petitioner intended by the execution of the waiver to assure the general contractor that petitioner would assert no claim against him for materials furnished . . . .
>
> Here the defendant had every reason to believe that the plaintiff would abide by the terms of the three-party agreement and the plaintiff knew the details of the subcontract entered into between the defendant and the Shenandoah Company and accepted payment under another contract for a profit made by the sub-contractor over and above the price of materials it had furnished. The fact that the contract here in question resulted in a loss to the sub-contractor does not change the

situation and the plaintiff is estopped from claiming any benefit other than that accruing to it under the three-way contract. The judgment of the court below is affirmed.

The Ninth Circuit recognized the doctrine in *United States for the Use of E. E. Black, Ltd. v. Price-McNemar Construction Co.*, 320 F.2d 663, 665 (9th Cir. 1963); the Tenth Circuit did so in *United States for the Use of Nelson v. Reliance Insurance Co.*, 436 F.2d 1366, 1371 (10th Cir. 1971). The United States Supreme Court recognized the application of the doctrine in an FELA case, *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), stating in part:

> To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.

\*　　\*　　\*　　\*　　\*　　\*

> As Mr. Justice Miller expressed it in *Union Mut. L. Ins. Co. v. Wilkinson*, 13 Wall. 222, 233, 20 L.Ed. 617, 622, 'The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage.

A leading authority on the subject is *United States of America for the Use and Benefit of Humble Oil & Refining Co. v. The Fidelity and Casualty Company of New York,*, 402 F.2d 893 (4th Cir. 1968), a Miller Act case where the facts are surprisingly similar and where the court, citing with approval *Glus v. Brooklyn Eastern District Terminal, supra,* held that a detriment to Humble by the forbearance was evident from the record and would be manifestly unjust

unless Humble were permitted to invoke equitable estoppel. Following the reasoning of the Fourth Circuit, this court refuses the motion to dismiss.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

 Plaintiff's motion for summary judgment finds no opposition in the record before this court, except that imposed when defendant surety (but not defendant Martz) raised the issue of the statute of limitations. This court has disposed of that issue on the motion to dismiss. The doctrine of equitable estoppel has been applied by this court and neither of defendants can invoke the statute of limitations because of the course of conduct, obviously designed to lead the plaintiff to rely to its detriment upon the representations of the surety, who had acknowledged the claim, made payments thereunder, and, even though it attempted to take the role of an "interested bystander" despite its contract for suretyship, continued to correspond with the parties and to present the appearance of taking an active part in trying to secure payment. Such conduct sufficiently comes within the Fourth Circuit case ambit of *United States v. Fidelity & Casualty Co., supra,* to invoke the doctrine of equitable estoppel. The amount is not in issue, the fact that the construction company received the material is not in issue, the suretyship contract is not in issue, nor is the fact the debt is owing, and there is no reason to deny plaintiff its summary judgment in this case. Accordingly, the Clerk will enter summary judgment for the plaintiff.

Were this a jury action, this court would be tempted to restore the case to the jury calendar. However, it is not, and the responsibility of the court has been exercised, and a considerable time savings realized by having this court make the decision instead of going through the lengthy process of a jury trial, which was not requested.

The Clerk will enter judgment for the plaintiff in the sum of $8,640.86.[5]

AND IT IS SO ORDERED.

---

5. During the period of litigation Martz paid the plaintiff as a credit on his account the sum of $1000.00.