**SAFE ENVIRONMENT OF AMERICA, INC., Plaintiff**

v.

**EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company, Defendant**

**No. CIV.A. 02–30167–KPN.**

United States District Court, D. Massachusetts.

Aug. 26, 2003.

Michael K Callan, Doherty, Wallace, Pillsbury & Murphy, Springfield, for Safe Environment of America, Inc., Plaintiff.

Mark E. Draper, Annino, Draper & Moore, P.C., Springfield, for Employers Insurance of Wausau, Defendant.

Jerry B. Plumb, Jr., O'Connell & Plumb, P.C., Springfield, for Safe Environment of America, Inc., Plaintiff.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (Document No. 5)*

NEIMAN, United States Magistrate Judge.

Safe Environment of America, Inc. ("Plaintiff") brings this action against Em-

ployers Insurance of Wausau, A Mutual Company ("Defendant"), to recover on a payment bond executed by Eastern General Contractors ("Eastern") to the United States pursuant to the Miller Act, 40 U.S.C. §§ 270a to 270d (2001) (recently recodified at 40 U.S.C. §§ 3131, 3133 (2003)). A payment bond is meant to protect all persons supplying labor and material for work on a public building where the contract is for more than $100,000. *See* 40 U.S.C. § 3131(b)(2). Defendant has filed a motion to dismiss the action pursuant to Fed.R.Civ.P. Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. Rule 56(c). For the reasons which follow, Defendant's motion will be allowed.[1]

## I. BACKGROUND

At some point prior to June 5, 2000, Eastern was awarded a contract with the Department of the Navy to perform certain work for a revitalization project at the Groton Submarine Base in Connecticut. (Document No. 4 ("Complaint") ¶ 6.) In connection with the contract, Eastern was required to post a Labor/Materials Payment Bond (hereinafter "the bond") to secure payment to all persons supplying labor and materials for the work provided under the contract. (*Id.* ¶ 8.) Defendant issued the bond, by which Eastern and Defendant bound themselves jointly and severally. (*Id.*) On June 5, 2000, Eastern entered into a subcontract with Plaintiff wherein Plaintiff agreed to provide all labor and materials relating to the abatement of asbestos and lead-containing materials at the project site. (*Id.* ¶ 10; Defendant's Facts (attached to Document No. 5) ¶ 5.).

By September of 2000, substantial changes to the project instituted by the Navy caused significant disruptions and delays. (Document No. 9 ("Plaintiff's Affidavit") ¶¶ 9–10). As a result, on February 16, 2001, Eastern and Plaintiff entered into a written agreement (hereinafter "the agreement") wherein Eastern promised to sponsor and prosecute a Request for Equitable Adjustment ("REA") to the Navy on Plaintiff's behalf. (*Id.*, Exhibit C.)[2] The agreement also provided that payment or disallowance of the REA would extinguish all further obligations for adjustments and would operate as a full and complete release for all adjustments relating to Eastern's subcontract with Plaintiff. (See *id.* ¶ 14 and Exhibit C.) Finally, the agreement required Eastern to pay Plaintiff its portion of the REA within ten days of Eastern's receipt of an adjustment from the Navy. (See *id.* ¶ 15 and Exhibit C.)

In February of 2001, Plaintiff submitted information to Eastern substantiating an REA of approximately $1.1 million. (*Id.* ¶ 20.) In June of 2001, however, Eastern suspended Plaintiff's work and shortly thereafter, in July, hired two subcontrac-

1. Although not addressed by either party, the Miller Act provides that suits must be brought "in the name of the United States for the use of the person bringing the action." 40 U.S.C. § 3133(b)(3)(A). Plaintiff has not done so here. That failure, however, is, " 'at the worst, a mere formal irregularity, and should not affect either the jurisdiction of the court or the merits of the controversy.' " *Blanchard v. Terry & Wright, Inc.*, 218 F.Supp. 910, 913 (W.D.Ky.1963) (quoting *United States ex rel. Maxwell v. Barrett*, 135 F. 189, 191 (C.C.N.D.Cal.1905)), *aff'd*, 331 F.2d 467 (6th Cir.1964). *See also Hendry Corp. v. Am. Dredging Co.*, 318 F.2d 299, 301 (5th Cir. 1963) ("[T]he failure to describe [the plaintiff] as a use plaintiff ... [is] merely a formal irregularity which, in the absence of any suggestion of prejudice, ought not to affect ... jurisdiction.").

2. The purpose of an REA is to seek equitable compensation for extra work performed as a result of the Navy's changes, disruptions and delays. (See *id.* ¶ 12 and Exhibit C.)

tors to replace Plaintiff. (*Id.* ¶ 18.) One of the replacements used Plaintiff's asbestos and lead abatement plan until January of 2002. (*Id.* ¶ 19.)

On March 27, 2002, Eastern submitted an REA to the Navy—with respect to Plaintiff and other subcontractors—for approximately $2 million, $1.1 million of which was Plaintiff's portion. (*Id.* ¶ 33 and Exhibit H.) In early May, the Navy paid Eastern a settlement of approximately $1.5 million. (*Id.* ¶ 35, Exhibit H.) It appears that the $1.5 million applied both to the March 27th REA and a second REA also for approximately $2 million. (See *id.*)

At about the same time, on May 6, 2002, Plaintiff, evidently unaware of Eastern's efforts, sent a letter to Eastern demanding prosecution of its REA. (See *id.*, Exhibit D.) On May 10, 2002, Eastern told Plaintiff that the REA had been submitted, that the Navy had disallowed Plaintiff's portion, and that Plaintiff's $1.1 million claim exceeded Plaintiff's actual costs for its work and was therefore false and fraudulent. (*Id.* ¶¶ 28, 35 and Exhibits E and F.) Shortly thereafter, on May 14, 2002, Plaintiff notified Defendant that it might file a claim on Eastern's bond. (Defendant's Facts ¶ 17 and Exhibit 2(B).) On June 6, 2002, Defendant requested documentation to support Plaintiff's threatened claim. (*Id.* ¶ 8 and Exhibit 2(C).)

On July 26, 2002, Plaintiff filed a civil action in the Hampden County Superior Court (C.A. No. 02–786) seeking damages from Eastern for money allegedly owed Plaintiff under the subcontract. It was not until September 11, 2002, however, during the discovery phase of that suit, that Plaintiff learned that Eastern had not only pursued the REA, but had received $1.5 million from the Navy. (Plaintiff's Affidavit ¶ 30 and Exhibit G.) Plaintiff now alleges that its $1.1 million claim was included in that settlement. (Document No.

8 ("Plaintiff's Facts") ¶¶ 28 and 29; Plaintiff's Affidavit ¶¶ 30 and 31 Exhibit G at 38.)

On October 18, 2002, about one month after learning that Eastern had received $1.5 million from the Navy, Plaintiff filed the instant Miller Act suit against Defendant in this court to recover on the bond. In due course, Defendant submitted the present motion to dismiss or for summary judgment, Plaintiff tendered an opposition, and the court heard oral argument.

## II. STANDARDS OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiffs. See *Gorski v. New Hampshire Dep't of Corrections*, 290 F.3d 466, 473 (1st Cir.2002); *Estate of Soler v. Rodriguez*, 63 F.3d 45, 53 (1st Cir.1995). A dismissal for failure to state a claim is appropriate if it appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 998 (1st Cir. 1992).

Pursuant to Rule 56(c), summary judgment is proper where the record reveals "that there is no sufficient issue as to any material fact and the moving party is entitled to judgment as a matter of law." The facts, and all reasonable inferences that may be drawn from them, must be viewed in a light most favorable to the non-moving party. *Cooperman v. Individual, Inc.*, 171 F.3d 43 (1st Cir.1999). An issue is genuine where "the evidence is such that a reasonable party could return a verdict for the nonmoving party," and a fact is material where it "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir.1993). Absent any genuine issue

of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Nav. Co.*, 974 F.2d 221, 223 (1st Cir.1992).

### III. DISCUSSION

Defendant's motion makes two essential arguments: (1) that the complaint, standing alone, fails to state a claim upon which relief may be granted and, therefore, should be dismissed pursuant to Rule 12(b)(6); and (2) that, in any event, summary judgment pursuant to Rule 56(c) is appropriate. Both arguments are grounded in the Miller Act's statute of limitations which states that "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or the material was supplied." 40 U.S.C. § 3133(b)(4). The court will address each argument separately.

#### A. *Rule 12(b)(6)*

Defendant first argues that Plaintiff's complaint should be dismissed outright under Rule 12(b)(6) because of Plaintiff's failure to even allege that the suit on the bond was commenced within the limitations period specified in the Miller Act—"one year after the day on which the last of the labor was performed or the material was supplied"—a provision the First Circuit has described as being unambiguous. *See GE Supply v. C & G Enters., Inc.*, 212 F.3d 14, 18 (1st Cir.2000). As Defendant points out, Plaintiff's complaint erroneously uses the statute's former language, i.e., that the claim was brought within one year of "the date of final settlement of the contract." (Complaint ¶ 15.)[3] For its part, Plaintiff argues that, as directed by the Supreme

Court, the Miller Act "must be construed liberally" for the purpose of "provid[ing] security for the payment of all persons who provide labor and material on public work," *Illinois Sur. Co. v. John Davis Co.*, 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206 (1917), and that the complaint could easily be amended.

In the court's view, any time used in amending the complaint will not be well spent; the amendment will only result in the court having to confront Defendant's fully-briefed summary judgment argument. Accordingly, the court will proceed with its analysis as if the complaint has been amended so as to properly allege that suit was brought within "one year after the day on which the last of the labor was performed or the material was supplied." With this in mind, the court turns to that part of Defendant's motion which seeks summary judgment.

#### B. *Rule 56(c)*

In support of its summary judgment argument, Defendant contends that: the day Plaintiff last performed labor or supplied materials was June 29, 2001; Plaintiff did not commence this action until October 18, 2002, more than one year later; and, therefore, the action is barred by the Miller Act's one year statute of limitations. For the reasons which follow, the court agrees. The court also finds unpersuasive Plaintiff's attempt to avoid the statutory bar via the doctrine of equitable estoppel.

##### 1. *Defendant's Limitations Argument*

■ There is strong factual evidence supporting Defendant's statute of limitations argument. For example, Eastern's

---

**3.** The Miller Act was amended by Pub.L. 86–135(b) in 1959 by replacing the phrase "date of final settlement of such contract" with the

words "day on which the last of the labor was performed or material was supplied."

project manager avows that, after June 29, 2001, he "never observed any employees [of Plaintiff] performing work or supplying labor and/or materials for the project," and that Plaintiff "submitted no payroll records or other documents to Eastern evidencing that it supplied [additional] labor and/or materials to the Project." (Defendant's Motion, Exhibit 1 ¶ 7.) Defendant also offers Plaintiff's weekly payroll report which describes the work performed on June 29, 2001, as "demobilization," i.e., the removal of Plaintiff's equipment and materials from the project site. (*Id.*, Exhibit 1(B).)

Notwithstanding this evidence, Plaintiff asserts that the limitations period commenced sometime in January of 2002 and that, as a result, its lawsuit was timely. According to Plaintiff, after it was suspended from the project in July of 2001, one of the replacement subcontractors hired by Eastern "used" Plaintiff's abatement plan and did not complete its work until January of 2002. (Plaintiff's Affidavit ¶¶ 13 and 14.) In essence, Plaintiff contends, the use of its plan by the new subcontractor constituted the "supply" of "materials" within the meaning of the Miller Act.

In support of its position, Plaintiff cites *United States Dep't of Navy ex rel. Andrews v. Delta Contractors Corp.*, 893 F.Supp. 125 (D.P.R.1995). There, the contractor used its subcontractor's crane to work on a project for the Navy and did not stop using it until January 27, 1993. *Id.* at 127. Shortly thereafter, on February 5, 1993, the subcontractor retrieved the crane. The court found that the limitations period did not commence until the crane was retrieved and, as a result, that the Miller Act suit filed on February 4, 1994, was timely. *See id.* at 128, 130. Similarly here, Plaintiff contends that "[o]nce the [abatement] plan was disclosed

under the terms of the original Subcontract, there was no way to retrieve it or to prohibit its use, which was dependent entirely upon the good faith of Eastern and its new subcontractors." (Document No. 7 ("Plaintiff's Brief") at 7 n. 3.)

Plaintiff's creative argument notwithstanding, the court concludes that the last day on which Plaintiff performed labor or supplied materials was, as Defendant argues, June 29, 2001. For one thing, the term "materials" cannot be read to encompass Plaintiff's abatement plan which, obviously, is nothing like the crane utilized by the contractor in *Delta*. Moreover, even were the abatement plan deemed "materials," the use of that plan by the replacement subcontractor does not equate to Plaintiff itself "supplying" materials under the Act. *See, e.g., United States ex rel. Taykinswell, Inc. v. Bencon Const. Co.*, 248 F.Supp. 502, 506 (D.Md.1965) (presence of materials previously supplied by subcontractor does not extend the limitations period past the date on which such material was actually supplied by subcontractor), *aff'd* 369 F.2d 405 (4th Cir.1966); *United States ex rel. Weithman v. Buckeye Union Cas. Co.*, 207 F.Supp. 552, 553–54 (N.D.Oh.1962) (original subcontractor not entitled to use date upon which replacement subcontractor completed work for limitations purposes). In other words, Plaintiff was at least four months past the Miller Act's one-year statute of limitations period when it filed suit on October 18, 2002.

### 2. *Equitable Estoppel*

■ Persevering, Plaintiff argues alternatively that Defendant should be equitably estopped from invoking the statute of limitations. Generally, one seeking to assert equitable estoppel must show "that (1) the party to be estopped made a 'definite misrepresentation of fact to another per-

son having reason to believe that the other [would] rely upon it'; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the 'reliance was reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." ' *Mimiya Hosp., Inc. SNF v. United States Dep't of Health & Human Servs.*, 331 F.3d 178, 182 (1st Cir.2003) (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). As both parties are well aware, the doctrine of estoppel has been applied in Miller Act cases:

> Estoppel, in the event of a disputed claim, arises where one party by his words, acts, and conduct led the other to believe that it would acknowledge and pay the claim, if, after investigation, the claim were found just, but when, after the time for suit had passed, breaks off negotiations and denies liability and refuses to pay. To constitute estoppel there must be deception relied upon by the other to his detriment.

*McWaters & Bartlett v. United States ex rel. Wilson*, 272 F.2d 291, 296 (10th Cir. 1959). *See also United States ex rel. E.E. Black Ltd. v. Price–McNemar Const. Co.*, 320 F.2d 663, 665 (9th Cir.1963) (discussing estoppel in Miller Act context); *United States ex rel. Nelson v. Reliance Ins. Co.*, 436 F.2d 1366, 1370 (10th Cir.1971) (similar).

■ There are several problems with Plaintiff's estoppel argument. First, Plaintiff could have sued on the bond without waiting for the REA to be resolved pursuant to Plaintiff and Eastern's Agreement.[4] Second, and more to the point, the party Plaintiff finally chose to sue in this action—Defendant—is not alleged to have engaged in any untoward conduct.

With regard to the latter point, there is no evidence that Defendant, as surety, induced Plaintiff to delay suit on the bond. Plaintiff admits as much. Rather, the evidence shows only that on June 6, 2002, in reply to Plaintiff's May 14, 2002 letter stating that it may file a claim on the bond, Defendant asked for supporting documentation. (Defendant's Motion, Exhibits 2(B) and 2(C).) Plaintiff never responded. In other words, there appear to be no acts by Defendant which might have equitably estopped it from relying on the one year limitations period. *Compare, e.g., Nelson*, 436 F.2d at 1370–72 (surety's assurances when claimant manifested an intent to sue that claim would be amicably settled justified invocation of equitable estoppel); *United States ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York*, 402 F.2d 893, 898 (4th Cir. 1968) (applying equitable estoppel where surety reneged on promise to pay after negotiation of claim ran past one-year limitations period); *United States v. Ellis Const. Co.*, 78 F.R.D. 317, 318 (E.D.Tenn. 1978) (defendant's possible misrepresentation of intention to pay overcomes dismissal argument); *U.S. ex rel. Bagnal Builders Supply Co. v. United States Fid. & Guar. Co.*, 411 F.Supp. 1333, 1338 (D.S.C.1976) (applying equitable estoppel where surety acknowledged and made payment on the claim); *United States ex rel. Atlas Erection Co. v. Continental Cas.*

---

**4.** To be sure, the exact relationship between the Agreement, on the one hand, and Defendant's bond obligations, on the other, is somewhat unclear. Accordingly, Plaintiff may well have been under the impression that it could not pursue the bond until the REA process was complete. Nonetheless, four days after it was notified that the Navy had disallowed the REA and still within the limitations period, Plaintiff notified Defendant that it "may" file a claim on the bond. Plaintiff, however, never filed that claim nor, more importantly, commenced a lawsuit in a timely manner.

*Co.*, 357 F.Supp. 795, 800 (E.D.La.1973) (equitable estoppel applied where surety assured subcontractor that all valid invoices would be paid upon completion of investigations but continued negotiations until limitation period expired).

In the court's estimation, the instant case is analytically indistinguishable from *General Ins. Co. of Am. v. United States ex rel. Audley Moore & Son*, 406 F.2d 442 (5th Cir.1969). There, the court held that a subcontractor could not overcome a statute of limitations defense when he offered no proof that he was misled by the surety. *Id.* at 444. The court found that a letter from the surety—which acknowledged the receipt of the subcontractor's claim and informed the subcontractor that it had asked the principal for more information—did not constitute an act on the part of the surety to lull the subcontractor into delaying litigation to his detriment. *See id.*

 Nevertheless, Plaintiff argues that Defendant "stands in Eastern's shoes" such that it may be held responsible on equitable estoppel grounds for Eastern's allegedly deceptive acts. In essence, Plaintiff contends that surety principles preclude *Defendant* from succeeding on a statute of limitations defense insofar as, in several jurisdictions, an act of a principal which estops it from setting up a defense operates equally against its surety. *See, e.g., Guthrie Investments, Inc. v. Stanton*, 252 Or. 465, 450 P.2d 551, 552 (1969) (guarantor of a lease not entitled to rely on the lessee's fraud as a defense to lessor's action in contract); *Union State Bank v. Am. Sur. Co.*, 324 Mo. 438, 23 S.W.2d 1038, 1044–45 (1929) (surety cannot make the defense unavailable to principal).

At first blush, Plaintiff's position does not appear unreasonable. Viewing the facts in a light most favorable to Plaintiff, Eastern was less than forthcoming in its dealings with Plaintiff. Prior to the expiration of the one year limit, Eastern met with the Navy and obtained $1.5 million in settlement on two REAs, one of which involved Plaintiff. Eastern never mentioned the REA settlement to Plaintiff or that it had "allocated" $300,000 of that settlement to Plaintiff. Eastern only told Plaintiff that the Navy had disallowed Plaintiff's portion of the REA in its entirety. As a result, Plaintiff assumed that its only remedy was to sue Eastern—as it did in state court in July of 2002—to force Eastern to pursue the REA further in compliance with their agreement. Had it been properly informed in May of 2002 that the Navy had settled with Eastern, Plaintiff asserts, it would have been able to pursue payment on the bond from Defendant within the Miller Act's one year statute of limitations, i.e., prior to June 29, 2002.

Unfortunately for Plaintiff, however, the cases on which it grounds its suretyship argument are inapposite. First, Defendant is not relying on any defense available only to Eastern, but is raising the statute of limitations in its own defense. Although a Miller Act claim may in certain instances be maintained against a prime contractor alone, *see United States ex rel. Apex Roofing & Insulation, Inc. v. Union Indem. Ins. Co. of New York*, 865 F.2d 1226, 1227 (11th Cir.1989) ("[j]urisdiction is limited to suits on the bond, not to suits against the surety who issued the bond"), the surety itself, as is the case here, may be sued directly on the bond as well, *see United States ex rel. Henderson v. Nucon Const. Corp*, 49 F.3d 1421, 1423 (9th Cir. 1995). It follows, therefore, that a surety may raise a statute of limitations defense arising out of its own relationship, or the lack thereof, with the subcontractor. *Cf. Apex Roofing*, 865 F.2d at 1227 ("'A release of the surety does not affect the liability of the principal.'") (quoting 72 C.J.S. *Principal and Surety* § 181 (1987)).

To be sure, Miller Act cases often involve claims where the surety and principal are sued "in solido." *See United States ex rel. Westinghouse Elec. v. James Stewart Co.,* 336 F.2d 777, 780 (9th Cir. 1964) (where estoppel was available to contractor against subcontractor's materialman, it was also available to surety); *United States ex rel. Fireman's Fund Ins. Co. v. Frank Briscoe Co.,* 462 F.Supp. 114, 117 (E.D.La.1978) (where contractor, not surety, waived Miller Act venue provision, surety was allowed to transfer suit relying on contractor's waiver). But whatever the lawsuit's configuration, it appears that only the surety's own acts or its knowledge of and participation in the acts of the principal can lead to equitable estoppel against that surety.

For example, the court in *Nelson* held that where the surety knew that the principal was in no position to negotiate settlements, yet represented to the subcontractor that settlement was near on four separate occasions, the surety's actions lulled the subcontractor into forbearing litigation under the bond. *See id.,* 436 F.2d at 1370. *See also Bagnal Builders,* 411 F.Supp. at 1338 (plaintiff relied to its detriment upon surety's representations). No such facts are alleged here. Indeed, there is no evidence that, at the time of its correspondence with Plaintiff in the spring of 2001, Defendant was even aware that Eastern had pursued an REA, had received a settlement, or had "allocated" (but not paid) a portion of that settlement to Plaintiff.

The facts at bar are more akin to those in *United States ex rel. Kane of New England, Inc. v. Diamond Const. Inc.,* 582 F.Supp. 886 (D.Mass.1984). There, Chief District Judge Andrew A. Caffrey held that there was no basis to equitably estop a surety from raising a statute of limitations defense when the subcontractor failed to prove that it had reasonably relied "on anything said or done by [the surety] or its representatives" in failing to timely file its lawsuit. *Id.* at 886–87. Similarly, in *United States ex rel. Witt v. JP, Inc.,* 655 F.Supp. 480 (D.Alaska 1987), a subcontractor failed to prevail on an equitable estoppel argument against the surety on the basis of the principal's acts. *Id.* at 481. Relying on *Kane of New England* and section 120 of the Restatement on Security, the court held that "estoppel does not operate against the surety where the conduct giving rise to it was conduct only of the principal." *Id.* That is the situation here as well.[5]

### IV. CONCLUSION

For the reasons explained, Plaintiff failed to file suit within the Miller Act's one-year limitation period and cannot overcome the limitations bar by applying the doctrine of equitable estoppel to Defendant. Accordingly, Defendant's motion, insofar as it seeks summary judgment, is ALLOWED.

IT IS SO ORDERED.

---

5. In this vein, the latest Restatement provides that "acts by a principal obligor or secondary obligor that toll the running of the statute of limitations as to that obligor's duty to the obligee do not toll the running of the statute of limitations as to the other obligor's duty to the obligee." Restatement (Third) of Suretyship and Guaranty § 65 (1996). The comments with respect thereto further provide that "[a]cts by either party that extend the time as to that party do not of themselves have the same effect on the obligation of the other party." *Id.* cmt. a. Although equitable tolling and equitable estoppel are distinct claims, the reasoning behind section 65, as elucidated by the comments, can be applied both to equitable tolling and equitable estoppel.